[741 NYS2d 207]

In the Matter of MARINO S. and Others, Infants. RAQUEL T. et al., Appellants; ANGEL GUARDIAN CHILDREN AND FAMILY SERVICES, INC., et al., Respondents.

First Department, April 23, 2002

### APPEARANCES OF COUNSEL

*Marcia Egger* of counsel to *Monica Drinane, Law Guardian,* for infants (*Brian Lamb* on the brief; *Legal Aid Society, Juvenile Rights Division,* attorney), for infants.

*Jay A. Waller* for Raquel T., appellant.

*Dora M. Lassinger* for Marino S., appellant.

*Ira L. Eras* of counsel (*Daniel Gartenstein* on the brief; *Warren & Warren, P.C.,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

This appeal presents, inter alia, the issue of whether, in a termination of parental rights proceeding, Family Court may retroactively apply the pertinent provisions of the Adoption and Safe Families Act (ASFA), i.e., Family Court Act § 1039-b and Social Services Law § 384-b (8) (a), enacted in 1999, subsequent to the filing of the instant petition to terminate, which, in the case of a finding that a child has been "severely abused," would excuse the requirement, otherwise applicable, of a showing of diligent efforts to reunite the family.

The three children involved in this matter, S., born April 5, 1989, V., born February 8, 1993, and M., born September 25, 1995, were removed from the care of Raquel, mother of all three children, and Marino, father of V. and M., in or about August 1997 and thereafter placed with Angel Guardian Children and Family Services (the agency) after findings of abuse were made against both parents based on Marino's rape, on July 31, 1997, of then eight-year-old S., while the child V. was sleeping in the same bed. In that proceeding, Raquel admitted having allowed Marino access to S. despite knowledge of a prior incident of sexual abuse perpetrated by him against the child. Findings of derivative abuse were made as to V. and M.

As a result of the rape, S. suffered severe internal injuries and profuse arterial bleeding. Marino and Raquel waited several hours to seek medical care for the child, conspiring to create a false story as to how she was injured. Upon admission to

the hospital, the child was listed as likely to die. She required surgery to repair lacerations to her vagina and remained hospitalized for nine days.

Criminal charges were brought against both parents. Marino subsequently pleaded guilty to rape in the first degree (Penal Law § 130.35), and was sentenced, as a second felony offender, to a prison term of 15 years. Raquel pleaded guilty to reckless endangerment in the first degree (Penal Law § 120.25), based on the delay in seeking medical assistance for S. and giving a false account at the hospital as to how the child was injured, and was sentenced to a prison term of from 1 to 3 years.

On or about August 28, 1998, the agency filed petitions to terminate the parental rights of Marino as to V. and M. and Raquel's rights as to all three children, alleging that both parents had abandoned and permanently neglected the children by failing to plan for and maintain contact with them despite the agency's diligent efforts. The petitions further alleged that Raquel had failed to gain insight into the problems that had led to the children's placement or to protect S.

Thereafter, on March 1, 1999, the agency filed supplemental petitions adding allegations that both parents had severely abused the children as that term is defined in Social Services Law § 384-b (8), and that, in accordance with Social Services Law § 384-b (8) (a) (iv), reasonable efforts to plan for the safe return of the children to the home were not required, given the nature and extent of Marino's deviant behavior. The agency sought a ruling that a showing of reasonable efforts in that regard was not necessary.

Fact-finding in the termination proceeding against Marino consisted of documentary evidence exclusively, including certified hospital records of S.'s post-rape treatment and the certificate of his rape conviction and transcript of the criminal proceedings. Marino called as his only witness the agency case supervisor, who testified that no efforts had been made to plan with him for the children's return because the agency had determined, based on the severity of the rape, the continued abuse of S. over a lengthy period of time, and Marino's sexual abuse of other young children, that such planning would be detrimental to the children's best interests. The agency had rejected parental relatives as resources because of information received from the law guardian and the children's godmother that "most of them" knew of the abuse and did nothing to protect the children. The agency had changed the plan to adoption after the children had been in care for several months.

At the separate fact-finding hearing involving Raquel, a certificate of her conviction was introduced as well as a transcript of the plea allocution in which she admitted that she conspired with Marino to cover up the rape, delayed in seeking medical help for S. and lied as to the cause of S.'s injuries. S.'s godmother testified to S.'s explicit complaints to her, at age four, as to Marino's "touching [of] her private parts." Raquel's response to being told of this incident was to strike S. and tell her not to lie. On another occasion, S. informed her godmother that Marino had threatened to throw her from the roof if she revealed his sexual abuse of her.

A Police Department detective testified as to the exculpatory account Raquel had given him at Bellevue Hospital and as to a series of similar suspicious incidents the detective's questioning of Raquel revealed. For example, Racquel claimed that in the summer of 1996, an eight-year-old female cousin, visiting from Georgia, had been climbing on an open cabinet, when she fell and hit herself between the legs and began to bleed from the vagina. S., at age four or five, had climbed on a cabinet, hurt herself and bled from the vagina. Raquel also admitted that her mother had once accused Marino of abusing Raquel's little sister. According to the detective, when told that Marino had made a videotaped confession of the rape, Raquel refused to believe it.

During the course of the fact-finding hearing, the court afforded the parties the opportunity to present evidence with respect to the agency's application pursuant to Family Court Act § 1039-b for a determination that reasonable efforts on the part of the agency to return the children to the parents were not required, because this was an instance where a parent "has subjected the child to aggravated circumstances" (subd [b] [1]). While Marino did not offer any evidence on the issue, Raquel presented the testimony of a counselor at the correctional facility where she was incarcerated as to her participation in a domestic violence support group. Raquel, according to the witness, was "no longer in denial" as to the rape and was in need of intense therapy and family counseling.

At the conclusion of the hearings, the Family Court found that both Raquel and Marino had "severely abused the subject children, in that the mother allowed the child to have a felony sex abuse committed on her, and, in addition, by her conduct after the rape, she severely endangered the child's life—and her conduct was to such a degree of disregard of the child's safety and welfare that, in fact, it was life-threatening to the

child." The court also made derivative findings, based on the severe abuse of S., as to the other two children, and, in a written decision (*Matter of Marino S.,* 181 Misc 2d 264), determined that the ASFA amendments were retrospectively applicable to the proceedings. In terminating the parental rights of Raquel and Marino, the court also found that by virtue of the severe abuse inflicted upon the children, the agency was excused from exercising reasonable efforts to reunite the family. At the conclusion of a dispositional hearing, the court, rejecting both parents' request for a suspended judgment, found by clear and convincing evidence that the children's best interests would be served by a plan of adoption. This appeal followed. We affirm.

In 1997, Congress enacted the Adoption and Safe Families Act (codified as amendments to scattered sections of 42 USC), to address certain problems in the area of adoption and foster care, particularly with respect to children abused by their parents or guardians. The Federal ASFA had two essential objectives: to identify the child's health and safety as the paramount concern of the child welfare system, and to expedite permanency planning. In that regard, one of the Act's goals was to prevent the return of a child to unrehabilitated abusive or neglectful parents, and, to that end, the Act created categories of cases in which "reasonable efforts" to provide for a return of the child to the parent(s) were not required.

On February 11, 1999, New York enacted its version of the ASFA (L 1999, ch 7), in order to conform New York law to the requirements of the federal act, and thereby be entitled to continued federal funding of various child welfare programs (*see,* 42 USC § 671 [a]). Pursuant to the New York ASFA, a court may determine that reasonable or diligent efforts to reunite a parent with a subject child are not required where the parent has subjected the child to "aggravated circumstances" (Family Ct Act § 1039-b [b] [1]), including severe abuse (Family Ct Act § 1012 [j]), which is defined as, inter alia, the intentional or reckless commission of acts by the parent under circumstances evincing a depraved indifference to human life which result in serious physical injury to the child (Social Services Law § 384-b [8] [a] [i]), or the commission or knowing allowance of the commission of rape in the first degree (Social Services Law § 384-b [8] [a] [ii]). A court may still determine that reasonable efforts should be exerted, provided that such efforts "would be in the best interests of the child, not contrary to the health and safety of the child, and would likely result in the reunification of the parent and the child in the foreseeable future" (Family Ct Act § 1039-b [b]).

The parents argue on appeal, as they did before the Family Court, that the New York ASFA should not apply retroactively. As a general rule, statutes are to operate prospectively (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b]). However, an exception to the rule exists in the case of remedial statutes, which are "designed to correct imperfections in the prior law," or which provide a new remedy, and therefore are to be liberally construed and applied retroactively, unless there is express contrary language or a vested right would be impaired (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 54 [a]; *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117, 122). The ASFA is a remedial statute, since it clarifies that the child's health and safety are of paramount concern in determining whether reasonable efforts are necessary, and serves to expedite the permanency planning for abused children by allowing the agency to obtain an immediate determination (i.e., during the abuse proceeding) on the diligent efforts issue, rather than expend its substantial effort in considering and preparing an obviously unfit, abusive, parent as the permanent placement, or foregoing these efforts at the risk that a court might disagree during the subsequent termination proceeding and then dismiss the termination petition for failure to exercise diligent efforts.

That ASFA was merely clarificatory and did not create a new right or affect a pre-existing one is borne out by the Assembly memorandum in support of the Act, which noted "the existing law in New York that the health and safety of the child were always the paramount concern in providing reasonable efforts to prevent placement and promote reunification" and that the new measure "does not represent a change in law, policy or emphasis in New York" (NY State Assembly Mem in Support, 1999 McKinney's Session Laws of NY, at 1487). Indeed, even prior to the ASFA, the agency was excused from exerting diligent efforts concerning a parent and a severely abused child "when such efforts will * * * be detrimental to the best interests of the child" (Social Services Law former § 384-b [8] [a] [ii]; *see*, *Matter of Sheila G.*, 61 NY2d 368, 383 n 5). Thus, under the pre-amendment law, the court had discretion to dispense with diligent efforts, and the ASFA did not create or abridge any rights. Accordingly, the ASFA, a remedial statute reflecting important public policy concerning the health and safety of children, should be applied retroactively (*see*, *Gelb v Brown*, 163 AD2d 189, 191).

A motion requesting a finding that diligent efforts are not required may be brought "[i]n conjunction with, or at any time

subsequent to," the filing of an abuse or neglect petition (Family Ct Act § 1039-b [a]), and thus may be brought simultaneously with a petition to terminate parental rights. Although Family Court Act § 1039-b (a) mentions that such a motion request a "finding that reasonable efforts to return the child to his or her home *are no longer* required" (emphasis added), we do not construe that as mandating that the agency must exercise diligent efforts up to that point, that only the need for future efforts may be determined, and that the failure to exercise diligent efforts up to that point requires dismissal of the termination petition.

Such a conclusion would be at odds with the remedial nature of the Act, as well as the fact that a motion to dispense with reasonable efforts may be made "at any time subsequent to" the filing of an abuse or neglect petition, and the very next subdivision provides that "reasonable efforts to make it possible for the child to return safely to his or her home shall not be required where the court determines that," inter alia, the parent has severely abused the child (Family Ct Act § 1039-b [b]). The language of subdivision (b) is not qualified by any temporal limits, and suggests that a finding of severe abuse eliminates all reasonable efforts requirements. Indeed, under such circumstances, the court can only require reasonable efforts if it determines that "providing reasonable efforts would be in the best interests of the child" and "not contrary to the health and safety of the child" (Family Ct Act § 1039-b [b]). It would be an absurd result to require reasonable efforts until a judicial determination is made when the Act itself recognizes that there are situations where reasonable efforts may actually be harmful to the child. In fact, Social Services Law § 384-b (8) (a) (iv) states that "the agency shall not be required to demonstrate diligent efforts" where "a court has previously determined in accordance with this chapter or the family court act that reasonable efforts to make it possible for the child to return safely to his or her home are not required." That language is all-encompassing and unrestricted by any time limits.

The facts establish, by clear and convincing evidence, that Raquel severely abused S. by knowingly allowing her to be raped by Marino and by engaging in conduct which thereafter endangered S.'s life. For the reasons stated in the Family Court's thoughtful opinion, we agree that derivative findings of severe abuse may be made in termination proceedings, and the evidence amply supports a derivative finding of severe abuse of M. and V. at the hands of both parents.

Accordingly, the orders of the Family Court, New York County (Sara Schechter, J.), entered June 28, 1999, which terminated Raquel T.'s parental rights to S., V. and M., and terminated Marino's parental rights to V. and M., and committed the custody and guardianship of the children to Angel Guardian Children and Family Services and the Administration for Children's Services, should be affirmed, without costs or disbursements.

WILLIAMS, P.J., TOM, MAZZARELLI and ANDRIAS, JJ., concur.

Orders, Family Court, New York County, entered on or about June 28, 1999, affirmed, without costs or disbursements.