Matter of Jaime S. (2005 NY Slip Op 51636(U))

[*1]

Matter of Jaime S.

2005 NY Slip Op 51636(U) [9 Misc 3d 1118(A)]

Decided on October 12, 2005

Family Court, Monroe County

Kohout, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 12, 2005

Family Court, Monroe County
In the Matter of Jaime S., A Child Under Eighteen Years of Age Alleged to be Neglected by Enedina E., Respondent.
N-417-99/04

James M. Paulino, Esq.
Deputy County Attorney
Attorney for Petitioner
Monroe County Department of Human Services
Nigos Karatas, Esq.
Attorney for Respondent
Edward J. Orlando, Esq.
The Legal Aid Society
Law Guardian

Joan S. Kohout, J.
On February 18, 2005 the Monroe County Department of Human Services (hereinafter "DHS") filed an Order to Show Cause pursuant to Family Court Act Section 1039-b requesting that it be excused from providing reasonable efforts to assist in the reunification of the respondent Enedina E. and her son Jaime, who is in foster care. On April 11, 2005 DHS filed a notice of motion supplementing the original papers and seeking a modification of the last foster care placement order made on December 21, 2004 to terminate or, alternatively, suspend visitation. The respondent opposes the requests of DHS.
In a pretrial decision dated July 6, 2005 this court held that reasonable efforts to assist the respondent may not be terminated under Family Court Act Section 1039-b [b][6] unless the [*2]petitioning agency proves by clear and convincing evidence that the parental rights of the respondent regarding a sibling have been involuntarily terminated and that continuing reasonable efforts would not be in the child's best interest, would be contrary to the child's health and safety and would not be likely to result in reunification in the foreseeable future.
A fact-finding hearing was held over several dates between April 27, 2005 and June 29, 2005. Additional time was allowed for submission of legal memoranda. The court has taken judicial notice of the prior orders and findings that have been made in this case, including multiple findings that the agency failed to provide needed assistance to the respondent and her son.
For the reasons explained below, the court denies the request to cease reasonable efforts to assist the respondent and her son pursuant to Family Court Act Section 1039-b and grants the request to modify the current placement order to suspend visitation pursuant to Family Court Act Section 1061.
Legal Background
Jaime S. has been in foster care since shortly after his birth on August 10, 1999. Since that time, DHS has twice unsuccessfully attempted to terminate his mother's parental rights based upon allegations of permanent neglect (see Matter of Jaime S.E., 4 Misc 3d 1013[A] [Fam Ct Monroe County 2004]). Both permanent neglect petitions, the first filed in 2000 and the second in 2003, were dismissed after trial because the agency failed to prove that it had made diligent efforts to assist Ms. E. and her son. In particular, the court found that DHS failed to arrange for Spanish speaking counselors for Ms. E. or services aimed at preserving and promoting Jaime's cultural heritage (see Social Services Law Section 384-b [7][a]; see also Matter of Richard W., 265 AD2d 685 [3rd Dept 1999]). DHS filed a third permanent neglect petition in 2004 which was withdrawn in April 2005.
During the time that Jaime has been in foster care, this court has made three separate findings in the context of yearly extensions of placement and permanency reviews that the agency failed to comply with court orders directing services for the respondent and her son [FN1] (see Family Court Act Section 1055 [b][iv][A][3]). This case is unique in that the court has made a total of five findings at fairly regular intervals covering periods from 2000 through December 2004, that the agency failed to meet its statutory duty to assist Ms. E. and Jaime.
 The most recent extension of placement and permanency review was decided on December 21, 2004. At that time, the court found that DHS had again failed to make reasonable efforts to assist the respondent and her son (see Family Court Act Section 1055 [b][iv][B][4]; see also Family Court Act Section 1055 [b][iv][A][3]). In light of the failings of the agency to assist the respondent, the court set the permanency goal as return to parent and established a service plan for the family. The current court ordered service plan includes substance abuse and mental health treatment with Spanish speaking providers for Ms. E., with a specific order that DHS pay for the cost of treatment. DHS is also ordered to help Ms. E. obtain stable housing. Finally, DHS is to consider whether a specialized parenting program aimed at strengthening Ms. E.'s [*3]relationship with Jaime should be implemented and if so to provide interpreter services for Ms. E., whose primary language is Spanish.
 No appeal was taken by DHS or the law guardian from any of the orders described above. At no time during the prior proceedings did DHS argue that it should be excused from its duty to assist the respondent or that it would be contrary to Jaime's best interest for services and visitation to continue.

Issues Presented
DHS requests that it be permitted to cease providing reasonable efforts to Ms. E. because parental rights to her older children have been terminated (see Family Court Act Section 1039-b[b][6]). Secondly, the agency seeks termination, or alternatively, suspension of visitation pursuant to the court's general authority to modify its own orders under Family Court Section 1061.
DHS Motion Pursuant to Family Court Act 1039[b]
Family Court Act 1039-b permits child welfare agencies to seek court permission to terminate assistance to parents whose children are in foster care under certain very specific circumstances, including instances where parental rights to a sibling have previously been terminated (see Family Court Act Section 1039-b [b][6]). Under New York law, the prior termination of parental rights of a sibling does not automatically mean that an agency may stop making reasonable efforts to reunite the family. Continued efforts may be directed if the court "determines that providing reasonable efforts would be in the best interests of the child, not contrary to the health and safety of the child, and would likely result in the reunification of the parent and the child in the foreseeable future."
DHS contends that its motion under Family Court Act Section 1039-b [b][6] must only be proven by a preponderance of the evidence and that the statute merely contains a rebuttable presumption providing the parent with an opportunity to prove that continuing reasonable efforts to reunify the family is in the child's best interest. This court, however, has already determined that a motion requesting that reasonable efforts be terminated must be proven by clear and convincing evidence and that the agency must prove not only that parental rights to a sibling have previously been terminated, but also that continuation of efforts would not in Jaime's the best interests, would be contrary to his health and safety and would not be likely to result in reunification within the foreseeable future (see Matter of Edwin L., 3 Misc 3d 1108[A][Fam Ct, Kings County 2004]; Matter of Jasbin H., 184 Misc 2d 23, 25 [Fam Ct, Oneida County 2000]; Matter of Sarah B., 2003 NY Slip Op 50703 [U]).
Even assuming that DHS is correct as to the legal standard and that merely a preponderance of the evidence is required after which the burden of going forward shifts to the respondent, the proof does not support a finding that reasonable efforts, specifically services for the respondent, should be terminated. The uncontroverted history of repeated failings of DHS to help the respondent and Jaime as documented in the five decisions and orders considered in the context of New York's long standing policy requiring child welfare agencies to assist families, more than rebuts any presumption that services should be terminated based upon the prior termination of parental rights of the siblings.
The respondent has raised as a threshold issue that a motion to terminate reasonable assistance brought pursuant to Family Court Act Section 1039-b must be filed by the county commissioner of social services not, as was the case here, by a subordinate. Initially, the issue was [*4]raised by way of a pretrial motion to dismiss, which was denied on the ground that the issue of whether the official who filed the motion was authorized to do so was more properly
 a question for trial. The respondent continued to request a dismissal of the motion on this ground at appropriate points during the trial.
A motion to terminate reasonable efforts may be made only by "the social services official" and may be filed after or in conjunction with the initiation of a neglect or abuse petition (Family Court Act Section 1039-b [a]).
DHS counsel concedes that "social services official" is defined as "a county commissioner of social services" (Social Services Law Section 2 [14]). It is reasonable that the legislature would require the commissioner, rather than a subordinate, file a motion to terminate services to the family because of the extreme nature of the remedy requested and because the denial of assistance to the parent can be expected to lead to termination of parental rights.
It is not disputed that the motion here was brought by R. Danforth Ross, Director of Child and Family Services Division of the Monroe County Department of Human Services, not by the Monroe County Commissioner of Human Services, Patricia Stevens.
At the trial, Mr. Ross testified to his understanding that he was authorized to file the motion to terminate reasonable efforts, but no direct proof was offered that Commissioner Stevens had delegated the specific responsibility to file the pending motion. In support of the agency's position that Mr. Ross possessed the legal authority to file the motion, Mr. Ross' job description was submitted (Exhibit "7") along with his testimony that he is responsible for all child protective services, foster care, adoption, preventive services and special childrens' services within DHS. Additionally, Mr. Ross testified that he was responsible for the filing of legal proceedings; more particularly, "[t]hat the legal proceedings are filed in the name of the Commissioner, but I routinely sign, for example, petitions to terminate parental rights. Signing of other petitions is delegated lower within our department." Mr. Ross also meets regularly with the commissioner to discuss issues of interest, but acknowledged that they never specifically discussed this case.
Although it would have been preferable for the commissioner herself to have filed the motion, or for a written delegation of authority to have accompanied Mr. Ross' affidavit, the record is sufficient for the court to find that Commissioner Stevens delegated the responsibility to commence neglect and abuse petitions, as well as file related applications such as the present motion, to Mr. Ross and his staff. Significantly, no proof was offered tending to show that Mr. Ross was acting beyond his authority in filing the instant motion.
The respondent does not contest that the parental rights to her oldest five children have been terminated in a proceeding resulting in an order entered February 26, 2004,[FN2] but does argue that [*5]reasonable efforts should not be terminated because there is no proof that continuation of services would be contrary to Jaime's best interest.
Although the agency could have requested that visitation be terminated as part of the request to cease reasonable efforts, it chose to separately plead its request to terminate or suspend visitation as a motion to modify the last foster care extension order under the court's broad authority to modify its orders (see Family Court Act Section 1061). Thus, the motion to terminate reasonable efforts is confined to the request that services and related assistance to the respondent and her son be discontinued.
While the petitioner presented witnesses who testified that continued visitation, at least in the present setting and format, was not in Jaime's best interest, there was no testimony that efforts to help Ms. E. by providing the services included in the last court order, including mental health and substance abuse treatment, assistance with housing and a specialized parenting program, would be contrary to Jaime's best interest. Nor was there any proof offered that continuing Jaime's therapy or services to promote his cultural heritage would be detrimental.
As a matter of public policy, the state through its child welfare agencies is charged with the duty to provide services and assistance to help reunify families (Social Services Law Section 384-b [1][a][iii]). This duty is grounded in the cultural assumption that it is "generally desirable for the child to remain with or be returned to the birth parent," (Social Services Law Section 384-b [1][a][ii]). Furthermore, the relationship between a parent and child is constitutionally sensitive and "one of the most delicate of societal relationships" ( Matter of Leon RR, 48 NY2d 117, 124 [1979]). When a parent is denied the assistance of the agency to reunify her family it likely will have a "profound effect" on her ability to plan for the child's future (Matter of Sheila G., 61 NY2d 368, 382 [1984]), thereby setting the stage for future termination of parental rights (see Social Services Law Section 384-b[7]).
Were the court to terminate services for this family, DHS would be rewarded for failing to comply with court orders in the past, since it is likely that the strains in Ms. E.'s relationship with Jaime were caused, at least in part, by DHS's inaction. Jaime is the only child in his sibling group never to live with his mother or live in a Spanish speaking home, which presents special challenges for reunification (see Matter of Jaime S.E., 4 Misc 3d 1013 at page 2 [A][Fam Ct Monroe County 2004]).
 Had DHS diligently provided case specific services and assistance to Ms. E. and Jaime aimed at addressing these issues, it might be reasonable to conclude that there is little use in continuing the services in the current court order. Since appropriate services were not provided and since the primary reason that Jaime entered foster care was substance abuse by his mother, a condition open to therapeutic intervention, it is reasonable to conclude that Ms. E. could be rehabilitated if appropriate help were available.
The difficulties in the relationship of Ms. E. and her youngest child are not directly related to Ms. E.'s past substance abuse problem and have been well known to the agency for years since they have been documented in the prior decisions of this court. DHS made no attempt to address the situation until a referral was made to psychologist Wendy Nilsen in February 2005 by the child's pediatrician, Moira Szilagyi. It was only after Dr. Nilsen contacted DHS that the agency caseworker requested that Jaime receive a psychological evaluation. Similarly, social worker Sara VanBortel testified that she provided services only to Jaime and offered no opinion as to Ms. E.'s needs.
[*6]
None of the expert witnesses ever interviewed Ms. E. Nor did they request the opportunity to speak with her.[FN3] All history was received from the foster mother and DHS caseworker. As a result, the expert witnesses were not in a position to assess Ms. E.'s capabilities as a parent and offered no opinions on that issue.
Finally, it is noteworthy that Jaime went into foster care as a result of his mother's substance abuse problems, not because of extreme abuse which is so often the basis of termination of reasonable efforts ( see eg Matter of Marino S., 100 NY2d 361 [2003]; Matter of Justice T., 305 AD2d 1076 [4th Dept 2003]; Matter of Cecilia PP., 290 AD2d 836 [3rd Dept 2002]). Thus, there are no past parental behaviors that would allow the court to conclude that Ms. E.'s problems could not be ameliorated by appropriate services.
For all of the these reasons, the court finds that the motion to terminate reasonable efforts should be denied.
Termination or suspension of visitation
The primary focus of the testimony presented by DHS at trial was the impact that the present visitation format and schedule has had on Jaime. In order to terminate or suspend visitation DHS must present "substantial evidence" and "compelling reasons" that support a finding that visitation is detrimental to the child's welfare (see Chirumbolo v. Chirumbolo, 75 AD2d 992, 993 [4th Dept 1980]). Parent-child visitation is presumed to be in the child's best interest absent proof that it is harmful (see Matter of Nathaniel T., 97 AD2d 973, 974 [4th Dept 1983]).
DHS called three expert witnesses, pediatrician Moira Szilagyi, psychologist Wendy Nilsen and social worker Sara VanBortel, who all agreed that the current visitation schedule causes Jaime stress which negatively impacts his development and life. Jaime has verbalized that he does not like visits and has also acted out negatively by kicking, biting and being defiant. In December 2004 Jaime began counseling with Mount Hope Family Center social worker Sara VanBortel to address behaviors in his foster home and the stressors in his life. Interestingly, Jaime's relationship with his mother apparently was not an issue addressed in counseling.
Jaime visits with his mother at DHS once per week for one and one-half hours in the presence of a Spanish speaking caseworker, Luz Gonzalez. Ms. VanBortel and Dr. Nilsen both observed one visit between Jaime and his mother. Both witnesses testified that Ms. E. brought food to the visit for her son, but that there was little interaction between the mother and child. Most conversation was in Spanish between the caseworker and Ms. E., a language which the observers did not understand. During the latter part of each 90 minute visit Jaime became defiant, asked to leave or tried to leave and became increasingly agitated.
Dr. Nilsen reported in her written evaluation that "the current schedule is not only destructive to Jamie's [sic] emotional health, but it is also detrimental to any relationship he might have with his biological parent because it is paired with a high degree of negative effect" (Exhibit "5").
The problems with visitation are not new. Yet, despite the direction in the last court order that a specialized parenting program be considered for the respondent, no services have been [*7]provided or offered by DHS to strengthen the relationship between Jaime and his mother.[FN4] Pediatrician Moira Szilagyi testified regarding a therapeutic visitation model, which may be appropriate in this case, that provides a highly skilled Master's level social worker to mentor the parent and improve parent child interaction. Dr. Wendy Nilsen testified that she heads a therapeutic visitation program and Sara VanBortel testified that her agency Mount Hope Family Center provides counseling for parents and foster children who have difficulties with their relationship. None of these services were offered to the respondent.
DHS has proven by substantial evidence that there are compelling reasons to suspend visitation between Jaime and his mother. All of the expert witnesses agreed that the visitation as presently arranged, which is a weekly 90 minutes supervised visit supervised by a caseworker at the office of DHS, is stressful and harmful to Jaime. None of the witnesses, however, testified that visitation in the future or in a different format, such as therapeutic visitation or shortened visitation, would necessarily be detrimental. Thus, there is insufficient proof to support an absolute termination of visitation at this time.
Therefore, the court finds that the order entered on December 21, 2004 should be modified to suspend visitation. The court declines to grant the alternative relief requested of termination of visitation since none of the experts testified that visits should be completely ended.
The case is adjourned until Monday October 25, 2005 at 1:30 p.m. for post-dispositional review at which time the court requests that DHS present a plan for services and/or an alternative visiting plan. All witnesses noted that Jaime managed better during the beginning of the visit and DHS should, therefore, consider whether a shorter visit or a visit in a different setting, perhaps a therapeutic setting, would be more appropriate. DHS is reminded that in the last permanency review order made December 21, 2004 the permanency goal was set by the court as return to parent.
This shall constitute the order and decision of the court.
Signed at Rochester, New York on the day of 12th day of October, 2005.
_____________________
JOAN S. KOHOUT
Family Court Judge
[*8]
Footnotes

Footnote 1:Findings that DHS failed to follow court orders and failed to make reasonable efforts aimed at reunification were made in extension of placement decisions and orders dated 1/24/02, 12/23/02 and 12/21/04.

Footnote 2:The respondent has appealed from the order terminating her parental rights to her oldest five children, but no determination has yet been rendered. The February 26, 2004 order was based upon a finding that the respondent violated a suspended judgment in a permanent neglect case regarding the oldest children. Significantly, there is no requirement that the agency make diligent efforts at that stage of the case (see Matter of Patricia O., 175 AD2d 870, 871 [2nd Dept 1991]). While there had been a prior finding of diligent efforts made at the time of the permanent neglect determination, it is relevant that those efforts largely occurred prior to Jaime's birth in August 1999 (see Matter of Jaime S.E., 4 Misc 3d 1013 [A] [Fam Ct Monroe County 2004]).

Footnote 3:In her report received as exhibit "5" psychologist Wendy Nilsen stated that her evaluation occurred after "consultation" with the biological parent. In reality, however, Dr. Nilsen never met with Ms. E. or consulted with her because she believed she needed special permission to do so from the respondent's attorney.

Footnote 4:In the court order dated December 21, 2004 (par. 7, p.12) it was directed that DHS "in consultation with the respondent shall consider whether specialized parenting training, such as the Mount Hope Attachment Program, would be beneficial to improve the relationship between the respondent and Jaime. If such services are recommended by the agency, Ms. E. shall attend and the services shall be provided in Spanish or with a Spanish language interpreter."