Peters, EJ.
Appeal from an order of the Family Court of St. Lawrence County (Potter, J.), entered December 21, 2011, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 10-A, to be relieved of its obligation to make reasonable efforts to reunify Christopher RR. with the subject child.
Shortly after the birth of her son Jayden in 2010, petitioner commenced this neglect proceeding against respondent (hereinafter the mother) and removed Jayden from her care. After the mother consented to a finding of neglect and Jayden’s continued placement in foster care, Christopher RR. (hereinafter the father) was determined to be Jayden’s father and placed on notice of the neglect proceeding and the ensuing permanency hearings (see Family Ct Act §§ 1035, 1055, 1088, 1089 [b]). Petitioner accordingly facilitated visitation between the father and Jayden, and offered services intended to enable Jayden’s placement with him. Those efforts proved to be unsuccessful, and petitioner moved to be relieved of its obligation to make further reasonable efforts to return Jayden to his father’s care because the father’s parental rights had been involuntarily terminated with regard to two of Jayden’s half siblings (see Family Ct Act § 1039-b [b] [6]; [e]). Family Court granted petitioner’s motion, and the father appeals.
We affirm. A social services agency may move to be relieved of its obligation to undertake reasonable efforts to return a child to his or her home “[i]n conjunction with, or at any time subsequent to, the filing of’ an abuse or neglect petition (Family Ct Act § 1039-b [a]). Here, while a neglect petition was filed solely against the mother, contrary to the father’s contention, nothing in Family Ct Act § 1039-b limits its scope to the respondent(s) named in the underlying petition. Moreover, to infer such a limitation would undercut the purpose of the statute, which was intended to promote the health and safety of the child by expediting permanency planning (see Matter of Marino S., 100 NY2d 361, 371 [2003], cert denied 540 US 1059 [2003]). In furtherance of that goal, the father was placed on notice of this neglect proceeding against the mother and participated in it, and he does not dispute that he was advised of his right to address custody issues in this proceeding and that a termination of parental rights petition could be brought against him regardless of whether he was a named respondent (see Family Ct Act § 1035 [d]; Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 *1276 AD3d 1246, 1251 [2010]).[1] Petitioner’s motion thus squarely related to the “limited statutory role” played by the father in this proceeding (Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d at 1251), as it sought “an immediate determination ... of whether [petitioner] must exercise diligent efforts ... in preparing an obviously unfit parent for permanent placement” (Matter of Marino S., 100 NY2d at 371; see Matter of Kyle M., 5 AD3d 489, 490 [2004]). Both the language of the statute and its underlying justification therefore support petitioner’s authority to make the motion at issue here.
Nor do we agree with the father’s assertion that Family Ct Act § 1039-b (b) (6) unconstitutionally distinguishes between individuals whose parental rights were involuntarily terminated and those who voluntarily surrendered those rights.[2] An involuntary termination of parental rights stems from a showing by a social services agency that one or more enumerated circumstances demonstrate a parent’s inability to “provide a normal family home for [his or her] child” and that further placement in foster care is inappropriate (Social Services Law § 384-b [1] [a] [iv]; see Social Services Law § 384-b [3] [g]; [4]; Matter of Ricky Ralph M., 56 NY2d 77, 84-85 [1982]). It accordingly leads to an adoption that will “relieve[ ] the biological parent ‘of all parental duties toward and of all responsibilities for’ the adoptive child over whom the parent ‘shall have no rights’ ” (Matter of Gregory B., 74 NY2d 77, 91 [1989], quoting Domestic Relations Law § 117 [1] [a]; see Santosky v Kramer, 455 US 745, 767 [1982]; Matter of Ricky Ralph M., 56 NY2d at 80; Matter of Shane J. v Cortland County Dept. of Social Servs., 305 AD2d 751, 751 [2003]). In contrast, a voluntary surrender may involve ongoing contacts between the biological parent and child, reflecting a valid “policy judgment that . . . posttermination contact” is appropriate in that context (Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 435 n 8 [2012]; see Matter of Jacob, 86 NY2d 651, 666-667 [1995]; Matter of Rita VV., 209 AD2d 866, 868-869 [1994], lv denied 85 NY2d 811 [1995]). Given this *1277 distinction, Family Ct Act § 1039-b (b) (6) is appropriately limited to individuals whose rights to further contact with their other children have indisputably been terminated.
The father also challenges the procedures employed by Family Ct Act § 1039-b in various respects but, in that regard, the Court of Appeals has already determined that those procedures do not offend principles of due process (see Matter of Marino S., 100 NY2d at 371). The record demonstrates, in any case, that the father’s parental rights had been involuntarily terminated with regard to Jayden’s half siblings and that he had not successfully availed himself of services offered in connection with this proceeding. Thus, the procedures employed by Family Court in this proceeding were adequate (see Family Ct Act § 1039-b [b] [6]; Matter of Dakota Y. [Robert Y.], 97 AD3d 858, 859-860 [2012], lv denied 20 NY3d 852 [2012]; Matter of Harmony P. v Christopher Q., 95 AD3d 1608, 1608-1609 [2012]).
Rose, Stein and Egan Jr., JJ, concur.
Ordered that the order is affirmed, without costs.

. To the extent that the father argues that due process required that he be named as a party respondent, we disagree. A nonrespondent parent in a neglect or abuse proceeding is advised of the consequences of prolonged foster care, such as the ultimate termination of his or her parental rights, and is offered the opportunity to intervene and address issues of temporary and permanent custody (see Family Ct Act § 1035 [d] [iii]; Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d at 1251). Petitioner’s motion, which relates solely to those issues, accordingly does not offend the father’s right to procedural due process (cf. Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d at 1250-1251).

. Notwithstanding the assertion of the attorney for the child, the Attorney General has been notified of the father’s constitutional challenges in this matter, and has declined to intervene.