Appeal by the father and cross appeal by the petitioner from an order of the Family Court, Kangs County (Barbara Salinitro, J.), dated July 14, 2016. The order, insofar as appealed from, after a fact-finding hearing, found that the father abused and neglected the child Nyair J. The order, insofar as cross-appealed from, after the fact-finding hearing and upon a finding that the petitioner failed to establish that the father derivatively abused or neglected the child Nasir O., dismissed the amended petition relating to that child insofar as asserted against the father.
 

 Ordered that the order is modified, on the law and the facts, by deleting the provision thereof dismissing so much of the amended petition relating to the child Nasir O. as alleged that the father derivatively neglected that child, and substituting therefor a provision finding that the father derivatively neglected the child Nasir O.; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Family Court, Kings County, for a dispositional hearing and a disposition thereafter on so much of the amended petition relating to Nasir O. as alleged that the father derivatively neglected that child.
 

 Vernon J. (hereinafter the father) is the biological father of the subject child Nyair J. and a person legally responsible for the subject child Nasir O. The Administration for Children’s Services (hereinafter ACS) commenced these proceedings pursuant to Family Court Act article 10, alleging, inter alia, that the father abused and neglected Nyair and derivatively abused and neglected Nasir. At a fact-finding hearing, ACS presented evidence that on August 9, 2015, Nyair, who was then less than one month old, was admitted to the hospital with seizures and a history of vomiting. He was found to have sustained subdural hematomas and bilateral retinal hemorrhages. An expert in pediatrics testified that the cause of these injuries was “non-accidental trauma” indicative of a forceful motion or shaking of the child’s head sustained sometime between the evening of August 6 and August 8, 2015. In addition to the above injuries, a bone survey revealed a fracture to Nyair’s lower left tibia. The expert testified that the leg fracture also was caused by “non-accidental trauma” and was sustained some time between August 1 and 4, 2015. ACS also presented evidence that at the time Nyair sustained the leg injury, he was under the care of his mother and the father, hut when he sustained the head injuries, his mother was hospitalized and the father was his primary caretaker.
 

 The father presented the testimony of a physician, who testified that she had interviewed the father, and that he had admitted “vigorously” shaking Nyair in order to get him to stop crying. The physician further testified that this vigorous shaking was the cause of Nyair’s brain and eye injuries.
 

 In an order dated July 14, 2016, the Family Court, inter alia, made a finding of abuse against the father with respect to the head injuries sustained by Nyair and a finding of neglect against the father with respect to the leg injury sustained by Nyair. The court also found that ACS failed to establish that the father derivatively abused or neglected Nasir and dismissed the amended petition relating to that child insofar as asserted against the father. The court reasoned that Nasir, who was three years old at the time of the incident, was “beyond the age where the [father] could cause him those types of injuries by shaking him.” The father appeals from so much of the order as found that he abused and neglected Nyair. ACS cross-appeals from so much of the order as dismissed the amended petition relating to Nasir insofar as asserted against the father.
 

 In a proceeding pursuant to article 10 of the Family Court Act, “proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible” (Family Ct Act § 1046 [a] [ii]). “[O]nce a petitioner in a child abuse [or neglect] case has established a prima facie case, the burden of going forward shifts to respondents to rebut the evidence of parental culpability” (Matter of Philip M., 82 NY2d 238, 244 [1993]).
 

 Here, ACS established a prima facie case that the father abused Nyair (see Family Ct Act § 1012 [e]; Matter of Clifford S. [Chevon G], 148 AD3d 1159 [2017]). Rather than rebutting ACS’s case, the evidence submitted by the father confirmed that he had vigorously shaken Nyair, causing his brain to bleed and his eyes to hemorrhage. Thus, the Family Court properly found that the father abused Nyair J.
 

 ACS also established a prima facie case that the father neglected Nyair (see Family Ct Act § 1012 [f] [i] [B]). Contrary to the father’s contention, ACS was not obligated to prove that Nyair was exclusively in the father’s care at the time that the leg injury occurred. Once ACS established that Nyair sustained an injury which would ordinarily not occur absent an act or omission of his parents or caretakers, and that the father was a caretaker of Nyair at the time that the injury occurred, the burden of explanation shifted to the father (see Matter of Philip M., 82 NY2d at 244). The father, who declined to testify at the hearing, failed to provide a reasonable explanation for Nyair’s injuries, or establish that the injuries took place when the child was in the exclusive care of someone other than himself (see Matter of Davion E. [Latoya E.], 139 AD3d 944, 946 [2016]; Matter of Maria S. [Angelo S.], 135 AD3d 944, 945 [2016]; Matter of Matthew O. [Kenneth O.], 103 AD3d 67, 74 [2012]). Accordingly, the Family Court properly found that the father neglected Nyair.
 

 “[P]roof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent” (Family Ct Act § 1046 [a] [i]). Contrary to the contention of ACS, the Family Court properly found that ACS failed to establish that Nasir was derivatively abused by the father (see Family Ct Act § 1012 [e] [ii]; Matter of Nayomi M. [Paul R.], 147 AD3d 413, 414 [2017]; cf. Matter of Marino S., 100 NY2d 361, 374 [2003]). However, we agree with ACS that it established, by a preponderance of the evidence (see Family Ct Act § 1046 [b] [i]), that the father derivatively neglected Nasir (see Family Ct Act § 1012 [f] [i]). “The focus of the inquiry to determine whether derivative neglect is present is whether the evidence of abuse or neglect of one child indicates a fundamental defect in the parent’s understanding of the duties of parenthood. Such flawed notions of parental responsibility are generally reliable indicators that a parent who has abused one child will place his or her other children at substantial risk of harm” (Matter of Dutchess County Dept. of Social Servs. v Douglas E., 191 AD2d 694, 694 [1993] [citations omitted]; see Matter of Christina Maria C., 89 AD2d 855 [1982]). The father’s physical abuse of Nyair demonstrated a fundamental defect in his understanding of parental duties relating to the care of children, placing Nasir in imminent danger of impairment of his physical, mental, or emotional condition (see Family Ct Act § 1012 [f| [i]; Matter of Douglas L. [Cheyanne J.], 147 AD3d 840 [2017]; Matter of Eliora B. [Kennedy B.], 146 AD3d 772, 774 [2017]; Matter of Devontay M., 56 AD3d 561, 562 [2008]; Matter of Infinite G., 11 AD3d 688, 689 [2004]; cf. Matter of Clifford S. [Chevon G.], 148 AD3d 1159 [2017]; Matter of Davion E. [Latoya E.], 139 AD3d at 946). Accordingly, the court should have made a finding that the father derivatively neglected Nasir.
 

 Mastro, J.P., Hall, Miller and Brathwaite Nelson, JJ., concur.