Matter of K.W. v J.D.M. (2005 NY Slip Op 51090(U))

[*1]

Matter of K.W. v J.D.M.

2005 NY Slip Op 51090(U)

Decided on May 3, 2005

Family Court, Suffolk County

Mackenzie, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 3, 2005

Family Court, Suffolk County
IN THE MATTER OF K.W. A.S., Petitioner,
against
J.D.M., Respondent.
xxx

Jeffrey Tavel, Esq.Robert M. GarciaFrancine Moss, Esq.
Attorney for PetitionerAttorney for RespondentLaw Guardian
Suffolk County Attorney1641 Deer Park Ave.3503 Veterans Memorial Hwy.
400 Carleton Ave., Deer Park, NY 11729Suite S
Central Islip, NY 11722 Ronkonkoma, NY 11779

Carol Mackenzie, J.
Suffolk County Department of Social Services, by a petition filed February 9, 2005, seeks an Order adjudicating K.W. as a child who has been abused by respondent, J.D.M., in accordance with the provisions of Article 10 of the Family Court Act. The petition further seeks an Order adjudicating A.S. as a severely abused. A fact finding hearing was conducted on April 22, 2005.
Suffolk County Department of Social Services (hereinafter County) alleges that in or around January 2005, the respondent subjected K.W. to sexual intercourse as defined in the Penal Law, in that respondent inserted his penis into the vagina of K.W. The County further alleges that, in or around January 2005, the respondent subjected K.W. to sexual contact as defined in the Penal Law, in that the respondent inserted his finger into the vagina of K.W. and touched the buttocks of K.W. The County also alleges that by subjecting K.W. to sexual intercourse and sexual contact, he severely abused A.S.
In support of these allegations, the County called as witnesses: Phyllis Marion, a registered nurse, a sexual assault nurse examiner, and a qualified expert in child sexual abuse; Detective Amy Goldstein of the Special Victims Unit; Police Officer Toulio Serata; and Christopher Weiner, a Child Protective Services worker. The County entered the following [*2]items into evidence: Curriculum Vitae of Phyllis Marian (Petitioner's No.1); Advocacy Medical Report (Petitioner's #2); two photographs of K.W.'s physical examination (Petitioner's #3); Statement of K.W. (Petitioner's #4).
In the case at bar, the mother of K.W. is ElsieW. A.S. is the son of Elsie W. and the respondent.
LAW
The County has the burden of establishing that the child's injuries were of a nature that would ordinarily not be sustained except for the acts or omissions of her parents (FCA §1046(ii), (proof of injuries sustained by a child or of the condition of the child of such a nature as would not ordinarily be sustained or exist except by reason of the acts or omissions of the parent...shall be prima facie evidence of child abuse or neglect...of the parent..."); Matter of Department of Social Services o/b/o Richard S., 204 AD2d 636 (2nd Dept. 1994)). Once the County makes out a prima facie case, the burden of going forward shifts to the respondent to provide a reasonable and adequate explanation for the injuries, "to rebut the evidence of parental culpability" (Matter of Phillip M., 82 NY2d 238, 244 (1993)). In a fact finding hearing, any determination that the child is an abused or neglected child must be based on a preponderance of evidence (FCA §1046(b)(i)); any determination that the child is severely abused must be based on clear and convincing evidence (FCA §1046(b)(ii)).
An abused child means a child less than eighteen years of age whose parent or other person legally responsible for his care commits, or allows to be committed an offense against such child defined in article one hundred thirty of the penal law (FCA §1012). A child is "severely abused" by his or her parent if the child has been found to be an abused child, as a result of such parent's acts; provided however, the respondent must have committed or knowingly allowed to be committed a felony sex offense as defined in sections 130.25, 130.30, 130.35, 130.40, 130.45, 130.40, 130.65, 130.67, 130.70, 130.75 and 130.80 of the penal law (Social Services Law §384-b(8))..
The Family Court Act provides that "proof of the abuse and neglect of one child shall be admissible evidence on the issue of abuse or neglect of any other child of, or the legal responsibility of the respondent" (FCA §1012(e)(I); FCA §1046(a)(i)(ii); In Re Nathaniel TT, 265 AD2d 611 (3rd Dept. 1999)). Further, Social Services Law permits derivative findings of severe abuse where the court finds severe abuse based on an abuse finding coupled with a felony sex offense against a sibling (SSL §384-b; In re Marino S., 100 NY2d 361 (2003)). Derivative findings of severe abuse may be predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well" (In re Marino S., id.). 
A child's prior out of court statements are admissible in evidence, and any other evidence tending to support the reliability of the previous statements... shall be sufficient corroboration of the child's statements (FCA §1046(a)(iv)); see, Matter of Nicole V., 71 NY2d 112 (1987); Commissioner of Social Services of the City of New York, o/b/o Tanya C. V. Evelyn R., 217 AD2d 697 (2nd Dept. 1995); Matter of Jessica Y., 206 AD2d 598 (3rd Dept. 1994)); Department of Social Services o/b/o Carol Ann D.v. Warren D., 195 AD2d 460 (2nd Dept. 1993)).
The failure of a respondent to testify in a proceeding to declare a child abused and [*3]neglected permits the drawing of any inference against him that is warranted by opposing evidence in record (FCA §1012(e)(iii), 1046(b); Matter of Philip DeG., 59 NY2d 137, 141 (1983); citing Noce v. Kaufman, 2 NY2d 353 (1957)). Mindful that the drawing of such an inference in an Article 10 proceeding exposes the respondent to serious consequences, the Court of Appeals has repeatedly affirmed that Article 10 proceedings are civil, and not criminal, in nature (People v. Roger Smith, 62 NY2d 306 (1984)). Such an inference being permitted where the required quantum of proof is "clear and convincing" evidence which is "entirely satisfactory" (Matter of Piccola v. Hibbard, 51 AD2d 674 (1976), aff'd 40 NY2d 1035(1976)) a fortiori it is permissible in an Article 10 proceeding, in which the quantum of proof is "preponderance of the evidence" (FCA §1046(b); Matter of Tammy Z., 66 NY2d 1 (1985)) and there is no statutory privilege not to testify (see, Matter of Jenny N. And Jaime N., 262 AD2d 951 (4th Dept. 1999)).
FINDINGS OF FACT
Ms. Phyllis Marion, a qualified expert in child abuse, testified as to her physical examination of K.W. on January 6, 2005. Ms. Marion, with the assistance of photographs (Petitioner's #3), explained the details of the examination and the findings of a persistent tear in the hymenal rim. Ms. Marion further explained that such an injury required actual penetration of K.W.'s vagina and could not possibly have been self inflicted or due to exterior touching.
Detective Amy Goldstein recited her special training for her current position in the Special Victim's Unit of the Suffolk County Police Department. She explained that an anonymous report to the State Central Registry was received on January 5, 2005 and lead to her assignment of the instant matter. Detective Goldstein responded to K.W.'s home address, accompanied by Christopher Weiner, a Child Protective Services caseworker, to conduct interviews and investigate the allegations. However, the two had to return later that afternoon as K.W. was in school. Detective Goldstein interviewed K.W. extensively and described K.W. as energetic and very bright. The interview was in English and the two discussed K.W.'s family, friends, and school. Detective Goldstein spoke about body parts with K.W. The child properly identified various body parts and, during this portion of the interview, volunteered the information that "daddy touched her where he touches mommy" and pointed to her vaginal area. K.W. told the Detective that daddy held her hands behind her back and put his finger in her private area. K.W. said that it hurt and bled. K.W. further told Detective Goldstein that daddy put his "private thing" inside her and that hurt also. She further defined "private thing" as "his thing that you go pee from". K.W. explained that she was worried her mother would not believe her. (The testimony of Christopher Weiner corroborated that of Detective Goldstein.)
Although K.W. spoke English fluently, Detective Goldstein testified that she had called the precinct for a Spanish interpreter to come to the scene to ensure that K.W. and her Aunt Leddy fully understood the purpose of the interview and the statements being made. Upon such request, Police Officer Toulio Serata arrived and clarified some topics for K.W. before she and her Aunt signed the statement. Officer Serata testified that K.W. clearly spoke both English and Spanish as she was translating for her Aunt.
Officer Serata also testified as to his interview of the respondent about 6:00 p.m. that day. The respondent was read his constitutional rights pursuant to Miranda v. Arizona (384 US 436 (1966))and waived same. The respondent then explained to Officer Serata that he was a father [*4]figure to K.W. but denied ever being alone with her or touching her. However, at approximately 11:30 p.m. that same night, the respondent contradicted his earlier answers and admitted to having been alone with KW.; having had sexual intercourse with K.W.'s mother while K.W. was in the same room; and "possibly" having touched K.W. on the breasts, butt and vagina while wrestling with her.
In an effort to explain the physical findings of Ms. Marion, both Anna S., the maternal grandmother and Elsie W., K.W.'s mother, testified to an incident that allegedly occurred in 2003 involving K.W. Both testified that K.W. was touched in her vaginal area by an older girl during a game of "mother and father". Neither witness called the police, Child Protective Services or even spoke with the girl's parents regarding the alleged incident. Upon K.W.'s accusation, Ms. S. inspected K.W.'s vaginal area and testified she saw no injuries, but only pinkness and assumed such to be a diaper rash.
Ms. W. further testified that the respondent is a good father and has a close and loving relationship with K.W. She further stated that K.W. admitted to her that she lied about the abuse because she was angry at the respondent because he wouldn't turn music off that K.W. didn't like.
Finally, Ms. W., and her sister Leddi S. testified that K.W. does not speak English and couldn't have possibly had a substantive conversation with Detective Goldstein or understood the statement she signed.
This Court interviewed K.W. for the sole purpose of evaluating her competency in the English language.
The respondent declined to testify.
CONCLUSION
After careful evaluation of the testimony of the witnesses and the photographs and documents introduced into evidence by the parties, the petitioner has established by a preponderance of the evidence that J.D.M. committed the act of Rape in the First Degree as defined in the Penal Law §130.35, in that the respondent inserted his penis into the vagina of K.W. It is further established that J.D.M. committed the act of Sexual Abuse in the First Degree as defined in the Penal Law §130.65, in that the respondent inserted his finger into the vagina of K.W. and touched the buttocks of K.W. Although K.W. did not testify at trial, the credible testimony of the petitioner's witnesses, the documents and photographs in evidence, provide a clear and detailed account of the respondent's sexual abuse of K.W. Although the County need only meet the burden of proving their case by the preponderance of the evidence (FCA 1046(b)(i)), this Court finds they have proved the case against the respondent by clear and convincing evidence, as is the standard in severe abuse cases (FCA §1046(b)(ii)). This Court further understands that as K.W. is not the biological child of the respondent, he could not have been charged with severe abuse with respect to her as there is no issue of terminating his parental rights (SSL §384-b).
However, as this abuse finding is coupled with a felony sex offense, this Court makes a finding of derivative severe abuse against the respondent as to A.S., his biological son (In re Marino, supra.). The respondent's abuse of K.W. demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in his care (see, In re [*5]Tiffany AA, 268 AD2d 818 (3rd Dept. 2000)).
This Court finds that the respondent failed to provide a reasonable and adequate explanation for the injuries, or "to rebut the evidence of parental culpability" (Matter of Phillip M., supra. ). The evidence clearly showed that the incident which allegedly occurred in 2003 could not have been the cause of K.W.'s injuries. Both Elsie W. and Anna S. stated that the incident involved touching, no penetration. Phyllis Marion, the qualified expert in child sexual abuse, confidently and credibly testified that the injury could only have resulted from actual penetration.
Further, contrary to the respondent's position, this Court finds that KW. has a clear and fluent understanding of the English language.
Finally, this Court draws a negative inference against the respondent due to his failure to testify. Such is warranted by the opposing evidence in the record (FCA 1012 (e)(iii)).
The parties are directed to appear before the undersigned for a dispositional hearing on
 May , 2005.
SO ORDERED:
 E N T E R
 _____________________________________
 J.F.C.