OPINION OF THE COURT
David M. Brockway, J.
Before the court is respondent’s motion to dismiss so much of the petition herein as alleges severe abuse and the decision to be rendered on fact-finding following the submission of stipulated facts.
Facts
On February 9, 2006, the Commissioner of Social Services for Chemung County (hereinafter referred to as Department) filed a petition with this court wherein it is alleged that respondent Argus MM. neglected, severely abused and abused the subject child, Meredith DD. The petition further alleges that Argus is a “person legally responsible” for the subject child’s care.[1] The incidents giving rise to the filing of the petition are allegations of ongoing rape and sexual abuse of Meredith by Argus, which, if true, clearly constitute Penal Law offenses as described in article 130 thereof. The stipulation of facts consented to by the parties for purposes of fact-finding also establishes the following: Meredith, date of birth 1991, is presently a child under the age of 18 years and was approximately 11 when the sexual abuse by Argus began; Argus was a person “legally responsible” for the child as defined in Family Court Act § 1012 from approximately 1993 until approximately November 2005, during which period Argus was the paramour of the child’s mother, Patricia DD. (hereinafter Patricia) and resided with Meredith and Patricia; when the child was approximately 11 years of age, respondent Argus began a sexual relationship with Meredith. This sexual relationship began as fondling and evolved into oral sex as well as sexual intercourse; once respondent Argus and the child began having sexual intercourse, respondent Argus had sexual intercourse with Meredith approximately three to four times per week; this conduct occurred over a period of approximately four years; respondent Argus would have the child perform sexual acts including, but not limited to, oral sex and sexual intercourse, so the child could have “privileges” such as *896 going to a friend’s home or not being grounded anymore; the last time respondent Argus had sexual intercourse with the child was October 2005 at their apartment on S. Main Street in the City of Elmira, County of Chemung, State of New York; the child is diagnosed as having a sexually transmitted disease, specifically, herpes; the child obtained this condition during the period of sexual conduct with respondent Argus; from the time of the initial sexual contact until November 2005, respondent Argus, Patricia and the child continually resided in Chemung County, although living at several different addresses; such conduct by respondent falls within the New York penal statutory definitions outlined in Family Court Act § 1012 (e) (iii); the child is impaired, as defined in the Family Court Act and relevant portions of the Social Services Law, due to the conduct and actions of respondent Argus. It was also stipulated on the record that Argus was neither a natural nor adoptive parent.
Respondent’s Motion to Dismiss
In the motion brought by Argus, this court is asked to rule on an issue rarely reported on at the trial level and as of yet apparently unaddressed by any appellate court. Specifically, the court is asked to decide whether a “severe abuse” proceeding can be maintained against an individual who is not the biological (or adoptive) parent of a subject child. In this regard, Argus has moved to dismiss so much of the petition as alleges the severe abuse of Meredith, inasmuch as he is not a parent to the child. In support of his motion, the respondent argues that Social Services Law § 384-b and the relevant portions of the Family Court Act expressly authorize, and concomitantly restrict, findings of severe abuse solely to parents whose parental rights may later be at stake as the result of a subsequent proceeding to terminate their parental rights.
In opposing respondent’s motion, the Department acknowledges that respondent’s interpretation of the statutory language may be sound. However, petitioner asserts that such a plain reading of the controlling statutes would give rise to a certain class of children who would be left unprotected by the provisions of Social Services Law § 384-b (8) and Family Court Act § 1051 (e) regarding subsequent proceedings to terminate *897 parental rights.[2] Additionally, the Department contends that an intertwined reading of Social Services Law § 384-b and Domestic Relations Law § 111 furnishes a statutory basis for making any “custodial” person (such as Argus) a “parent” for Social Services Law § 384-b purposes.
Discussion on the Motion
The importance to the Department in seeking a “severe abuse” finding as to any person has as its genesis its significance to parental rights, as laid out in section 384-b of the Social Services Law. The thrust of Social Services Law § 384-b is to provide a framework for the termination of parental rights (TPR) in specified instances wherein the health, safety and best interests of a child preclude that child’s continued or reunited placement with (a) birth parent(s). Under this framework, an authorized agency[3] may seek termination of the rights of (a) birth parent(s) when the nurturing parent-child relationship no longer exists, thereby freeing the child for adoption. The finding against a parent of the commission of “severe abuse” essentially makes the bringing and potential sustaining of a TPR an easier and quicker process for petitioning agencies.
Among the circumstances under which Social Services Law § 384-b authorizes the commencement of a TPR proceeding are those involving “severe abuse.” As is pertinent here, Social Services Law § 384-b (8) (a) provides that
“a child is ‘severely abused’ by his or her parent if
“(ii) the child has been found to be an abused child, as defined in paragraph (iii) of subdivision (e) of section ten hundred twelve of the family court act, as a result of such parent’s acts; provided, however, the respondent must have committed or knowingly allowed to be committed a felony sex offense as defined in sections 130.25, 130.30, 130.35, 130.40, 130.45, 130.50, 130.65, 130.67, 130.70, 130.75 and 130.80 of the penal law . . .” (emphasis added).
“Parent” is not specifically defined in Social Services Law § 384-b except as to generally include “an incarcerated parent." *898 [4] As relates to severe or repeated abuse, a "parent" or "parents" are those "whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law. . . "[5]
With due respect accorded the Department’s arguments, the court is unpersuaded that the provisions of Social Services Law § 384-b are meant to be so broadly construed as to include “any person having lawful custody of a child” simply because of the existence of various provisions of Domestic Relations Law § 111.[6] First, there is no evidence that Argus is or ever was a lawful custodian (i.e., one granted joint or sole legal custody by a court) of Meredith. Second, in holding to a limited reading of Social Services Law § 384-b, the court finds that the legislative intent in the enactment of Social Services Law § 384-b is clearly expressed in the body of the statute.[7]
It is readily apparent that, as alluded to above, Social Services Law § 384-b is unmistakably intended to establish necessary procedures and standards for the termination of parental rights and the weighing of those rights of birth parents vis-á-vis their children’s rights to permanency. As noted in the emphasized statutory language above, the statute quite simply limits a “severe abuse” finding to a “parent.” Moreover, it is well settled that “[wjords of ordinary import in a statute are to be given their usual and commonly understood meaning, unless it is clear from the statutory language that a different meaning was intended.” (We’re Assoc. Co. v Cohen, Stracher & Bloom, 65 NY2d 148, 151 [1985].) Such a reading is also supported by general construction laws. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 76 [“Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation”]; § 94 [“The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction”].)
Third, the legislative history of Social Services Law § 384-b supports such a reading; the interjection of “severe abuse” into *899 section 384-b appears to represent an additional measure implemented to expedite the legal process of freeing children (from their parents) for the purposes of adoption. (See, Bill Jacket, L 1999, ch 7; 1999 NY Assembly Bill A 962-A; Mem in Support of 2005 NY Senate Bill S 5805.) If any different meaning or intent is to be ascribed to “severe abuse” within the context of Social Services Law § 384-b, it is the Legislature which can and should do so, not a court by means of “judicial legislation” or application of a strained conjoining of the Domestic Relations Law and the Social Services Law.
Finally, it is instructive to note that several other trial courts of this state have held that where a child is not the biological child of an offender, a severe abuse does not lie, “as there is no issue of terminating . . . parental rights.” (Matter of K.W. v J.D.M., 8 Misc 3d 1013[A], 2005 NY Slip Op 51090[U], *4 [Fam Ct 2005]; see also Matter of William S., 12 Misc 3d 1157[A], 2006 NY Slip Op 50941[U] [Fam Ct 2006].)
Conclusion on the Motion
The subject child is not the biological or adoptive child of the respondent. And, even were the court to adopt the Department’s urged expanded definition of “parent,” Argus is also not a “lawful custodian” of the child. Furthermore, there is no allegation or evidence that there are any issues regarding Argus’ having any natural children and, therefore, the potential termination of any of his parental rights with respect thereto.[8] For the reasons set forth above, since only a parent can be adjudicated as having “severely abused” a child as defined by Social Services Law § 384-b (8), the court is constrained to grant respondent’s motion to dismiss so much of the petition as alleges severe abuse. In so deciding, the court is not unmindful that it might be beneficial to allow a finding of “severe abuse” against a current nonparent who certainly would have the potential of becoming a parent to his or her own child or children. However, such a finding can later be made within the present statutory framework on a derivative basis.[9]
*900 Fact-Finding and Conclusions on the Remaining Allegations of the Petition
To sustain a finding of abuse or neglect, petitioner has the burden of proving same by a preponderance of the evidence (see Matter of Philip M., 82 NY2d 238 [1993]; see also Family Ct Act § 1046 [b] [i]). As relevant here, a child is abused when one who is legally responsible for a child’s care “commits, or allows to be committed[, a sex] offense against such child” (Family Ct Act § 1012 [e] [iii]). A child is neglected when the child’s condition is impaired or in imminent danger of impairment due to the legally responsible caretaker’s failure to exercise a minimum degree of care to ensure proper supervision or guardianship of the child or by inflicting harm upon the child (see Family Ct Act § 1012 [f] [i] [B]). The facts herein clearly establish that Meredith was sexually abused (as defined in article 130 of the Penal Law) for a very long period. Aside from the obvious, the stipulated facts set forth above establish by a preponderance of the evidence that Meredith was both neglected and abused as defined above. This has clearly had a deleterious effect on Meredith, who was impaired by such conduct (see Family Ct Act § 1012 [h]; see Nicholson v Scoppetta, 3 NY3d 357 [2004]). Finally, it is also noted that Argus did not testify, permitting the court to draw the strongest possible negative inference against him (see, Matter of Collin H., 28 AD3d 806 [3d Dept 2006]; see also, Matter of John QQ., 19 AD3d 754 [3d Dept 2005]).
Therefore, it is hereby ordered that so much of the petition as alleges the severe abuse of the child Meredith DD. by respondent Argus MM. is hereby dismissed; and it is further ordered that the petition, as it relates to the neglect and the abuse of the subject child Meredith DD. by respondent Argus MM., is sustained by a preponderance of the evidence.

. (See Family Ct Act § 1012.) Argus has not disputed that he is a “person legally responsible.” Argus, a paramour of the natural mother, is not a biological, adoptive or stepparent to Meredith. Nor is there any evidence that he was ever a “lawful custodian” of the child.

. Petitioner argues that respondent’s interpretation of the law would create two “classes” of children: one severely abused by a biological parent and one severely abused by a custodial nonparent.

. Generally, the Department in this county.

. Social Services Law § 384-b (2) (b).

. (Social Services Law 384-b [4] [e].) It is not asserted that Argus is a putative “consent father.”

. See Domestic Relations Law § 111 (1) (f).

. Social Services Law § 384-b (1).

. In which case a derivative action could arguably lie (see n 9).

. See Matter of Marino S. (100 NY2d 361 [2003]). There, the New York State Court of Appeals held that “derivative severe abuse” might properly He, “predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well” (at 374).