OPINION OF THE COURT
Jeanette Ruiz, J.
This child fatality case involves the death of 19-month-old Hailey G. on August 10, 2007. Following the plea convictions of Marlene M., the respondent mother (hereinafter RM) and Edwin G., the person legally responsible for Hailey G. and the biological father (hereinafter PLR/RF) of Yamillette G.,[1] of manslaughter in the second and first degrees respectively, the Administration for Children’s Services (hereinafter petitioner) filed the instant motion on August 6, 2008, for an order of summary judgment pursuant to Civil Practice Law and Rules § 3212. Based upon the criminal convictions of the respondents, petitioner’s motion seeks findings of abuse and severe abuse of the subject children, Yamillette and Hailey, within the meaning of Family Court Act § 1012 (e); § 1051 (e) and Social Services Law § 384-b (8) (a) (iii); and (b).[2] The issue presented by petitioner’s motion for summary judgment is whether findings of severe abuse and derivative severe abuse, pursuant to Social Services Law § 384-b (8), can be entered as to PLR/RF whereas here, he is not the “parent” of the child whose death he has been criminally convicted of causing, though he is the “parent” of the deceased child’s half-sibling.
Background
On August 7, 2007, petitioner filed a severe abuse petition against RM and PLR/RF on behalf of Hailey and her two-month- *844 old half-sibling, Yamillette.[3] The petition alleged Hailey was admitted to the Richmond University Medical Center with a diagnosis of severe trauma to the head (i.e., fractured skull and bleeding of the brain), a punctured right lung and bruising to her left eye, and that she had to undergo emergency surgery to drain the blood from her brain and fluid from her lungs. It further alleged the likelihood of her survival was very low and that respondents were unable to provide the medical staff with an explanation consistent with the nature and extent of her injuries. The petition included an allegation of derivative abuse as to Hailey’s half-sibling, Yamillette.[4]
Petitioner’s Motion for Summary Judgment
In support of the motion for summary judgment, petitioner attached the following documentary proof:
A. An oral report transmittal (hereinafter ORT) dated August 7, 2007, from a mandated reporter, an EMS/EMT worker, and an ORT dated August 13, 2007, from another mandated reporter, a Richmond University Medical Center social worker;
B. A copy of the severe abuse petition, dated August 7, 2007, filed against RM and PLR/RF;
C. A duly certified and delegated medical record for Hailey from Richmond University Medical Center;
D. A certified report of autopsy, dated August 13, 2007;
E. Certified copies of the indictments of respondents;
F. Certificate of disposition indictment in Matter of People v M. M. (RM);
G. Certified transcript of Supreme Court, County of Richmond, plea proceeding, dated March 27, 2008;
H. Certificate of disposition indictment in Matter of People v E. G. (PLR/RF);
*845 I. Certified transcript of Supreme Court, County of Richmond, plea proceeding, dated March 28, 2008.
The attorney for the children filed an affirmation in support of petitioner’s motion for summary judgment, dated October 21, 2008. RM filed a reply affirmation to the motion, dated October 26, 2008, and PLR/RF filed an affirmation in opposition to the motion, dated November 13, 2008. Petitioner filed a reply to PLR/RF’s affirmation in opposition, dated December 5, 2008.
In her reply affirmation to the motion for summary judgment, RM does not dispute that Family Court Act § 1012, supports a finding of abuse against her with respect to the deceased child, Hailey, based upon her plea conviction of manslaughter in the second degree. Nor does RM contest that the court has authority to enter a derivative finding against her as to the surviving child Yamillette. RM does, however, maintain that the court should enter a finding of derivative neglect against her as to the child Yamillette and not a finding of derivative abuse. Finally, RM asserts petitioner’s application for a finding of severe abuse pursuant to Social Services Law § 384-b (8) as to both subject children should be denied.
In his affirmation in opposition, PLR/RF admits he recklessly caused the death of Hailey and does not contest that he was a “person legally responsible” of the deceased child. Further, he concedes that as a person legally responsible, and based upon his plea conviction of manslaughter in the first degree, a finding of abuse against him for the death of Hailey, pursuant to Family Court Act § 1012 (e) (ii), is warranted.
PLR/RF contends, however, that the portion of petitioner’s motion that seeks a finding of severe abuse and derivative severe abuse against him under Social Services Law § 384-b (8) is without merit. He argues that a finding of severe abuse as set forth in Social Services Law § 384-b (8) (a) (i) is explicitly limited to the “parent” of an abused child and that unlike the more expansive definition of an abused child as set forth in the Family Court Act, which is explicitly applicable to a “parent or other person legally responsible” (Family Ct Act § 1012 [e]), a finding of severe abuse under Social Services Law cannot be entered against him because he is not a parent of the deceased child. Relying on the Court of Appeals decision Matter of Alijah C. (1 NY3d 375 [2004]), PLR/RF argues that the omission of the language “person legally responsible” within Social Services Law § 384-b is not an oversight but rather reflects the clear legislative intent to limit the scope of the statute to parents of *846 abused children in relation to termination of parental rights proceedings and not to individuals who are not the biological parent of the abused child.
In their reply, petitioner asserts that there is well developed case law involving Family Court, Appellate Division and Court of Appeals decisions which clearly establish and support a finding of derivative abuse in factually similar circumstances as presented in this case. Specifically, petitioner relies in the Court of Appeals decision in Matter of Marino S. (100 NY2d 361 [2003]), in support of the proposition that where a derivative finding of abuse of a child is closely connected with the care of another child indicating that the second child is equally at risk, such derivative findings have been consistently sustained by the courts.
Moreover, petitioner argues that the plain language of Social Services Law § 384-b (8) (a) (iii) clearly refutes PLR/RF’s assertion that a finding of severe abuse against him in relation to his biological child (the surviving half-sibling of the deceased child) is improper. Petitioner points out that the definition of severe abuse contained in Social Services Law § 384-b (8) (a) (iii) supports a finding of derivative severe abuse as to PLR/RF for precisely the same reasons it supports such a finding as to RM with respect to her surviving child, Yamillette, who is the biological child of both respondents. Petitioner argues that it would be incomprehensible and absurd to conclude that Social Services Law § 384-b (8) supports a finding of derivative severe abuse as to RM in connection to her surviving biological child, Yamillette, but not as to PLR/RF, who is the biological father of the same child.
Analysis
As an initial matter, petitioner’s motion for an order of summary judgment in this child fatality case based upon documentary proof submitted, including proof of respondents’ criminal convictions, is properly before this court. It is well settled law that a motion for summary judgment is appropriate in neglect and abuse proceedings and should be granted if, upon all papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing summary judgment in favor of any party. (Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178 [1994].) Here, there are no factual issues presented that require a trial.
The question before this court is whether a respondent, who is a “person legally responsible” as defined by the Family Court Act and who causes the death of a child permitting a finding of *847 abuse to be entered against him pursuant to Family Court Act § 1012 (e) (i), can also be found to have severely abused the child whose death he caused as well as derivatively severely abused the surviving child who is both the half-sibling of the deceased child and the biological child of the respondent pursuant to Social Services Law § 384-b (8).[5] For the reasons set forth below, this court finds that Social Services Law § 384-b (8) (a) (i) does not permit this court to enter a finding of severe abuse against PLR/RF as to Hailey, but does permit this court to enter a finding of derivative severe abuse against him since he is the parent of the surviving child, Yamillette, the deceased child’s half-sibling, pursuant to Social Services Law § 384-b (8) (a) (iii).
The relevant facts in this child fatality case are not in dispute. Based on petitioner’s motion for summary judgment and the documentary evidence attached thereto, as well as the affirmation filed in support and the affirmations filed in reply and opposition to the motion, the facts are briefly summarized as follows:
1. On August 6, 2007, PLR/RF shook Hailey and threw her in the playpen. He admitted to RM that he didn’t mean to do it, that she (the child) got him upset and he could not control himself.
2. Between August 6, 2007 and August 7, 2007 respondents failed to seek timely, professional medical attention for the child who was exhibiting significant symptoms of illness which ultimately caused her death.
3. On August 7, 2007, respondents took Hailey to Richmond University Medical Center where she was admitted and diagnosed with severe head trauma, a punctured right lung, and bruising to her left eye. Unable to provide an explanation to hospital personnel consistent with Hailey’s injuries, both respondents were arrested and charged criminally.
*848 4. That same day, petitioner filed severe abuse petitions in Kings County Family Court on behalf of the target child, Hailey, and her surviving half sister, Yamillette, as to both respondents.
5. Hailey died of her injuries on August 10, 2007.
6. The Medical Examiner’s report of autopsy dated August 13, 2007, established Hailey’s cause of death as “blunt impact head trauma and shaking with subdural and bilateral retinal hemorrhages, diffuse axonal injury and cerebral edema and the manner of death as homicide.”
7. On August 28, 2007, respondents were indicted in Supreme Court, County of Richmond, of various charges of murder in the second degree; manslaughter in the first and second degrees; reckless endangerment in the first degree; criminally negligent homicide; and endangering the welfare of a child.
8. On March 27, 2008, RM was convicted by a plea of guilty to the crime of manslaughter in the second degree. In her allocution, respondent mother admitted to recklessly causing Hailey’s death in that between August 6th and August 7th she failed to seek timely medical attention for the child.
9. On May 28, 2008, PLR/RF was convicted in Supreme Court, County of Richmond, by plea of guilty to the crime of manslaughter in the first degree. In his allocution he admitted to recklessly causing the death of Hailey in that between August 6, 2007 and August 7, 2007, he created a grave risk of physical injury to the child by shaking and throwing her, thereby causing her brain injury and death.
10. On May 15, 2008, RM was sentenced to an indeterminate period of imprisonment of 2 to 6 years in state prison.
11. On June 11, 2008, PLR/RF was sentenced to a period of imprisonment of 25 years in a state correctional facility with five years of postrelease parole supervision.[6]
Family Court Act — Abuse/Derivative Abuse Findings
Both respondents concede that their respective criminal convictions provide this court the legal basis pursuant to the Family Court Act to enter findings of abuse against each of them for the death of Hailey. The Family Court Act definition of an abused child, states in relevant part, that a child is abused if the parent or other person legally responsible for the child’s care inflicts or allows to be inflicted upon such child physical *849 injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ. (Family Ct Act § 1012 [e] [i].) In this case, the facts establish that both respondents are responsible for the death of the subject child, Hailey. Both were criminally convicted of manslaughter in the first and second degrees, respectively, and both admitted during their pleas conviction allocution their role in causing the child’s death. Hence, pursuant to Family Court Act § 1012 (e) (i) this court concludes that a finding of abuse as to each respondent for the death of the subject child based on a preponderance of the evidence, is warranted. (Family Ct Act § 1051 [e]; see § 1046.)
Moreover, neither respondent contests findings of derivative abuse as to their surviving child, Yamillette, based upon the Family Court Act and existing case law. While the Family Court Act is silent on the question of derivative neglect and abuse in a child protective proceeding, Family Court Act § 1046 (a) (i) makes clear that “proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect or any other child of, or the legal responsibility of, the respondent.” Derivative findings in article 10 proceedings are predicated upon a common understanding that a parent or person legally responsible whose judgment and impulse control are so defective as to harm one child is likely to harm another child in his/her care. (Matter of Marino S., 181 Misc 2d 264, 276 [NY County 1999], citing Matter of Dutchess County Dept. of Social Servs. v Douglas E., 191 AD2d 694 [2d Dept 1993].) As such, a well developed body of case law exists outlining under what circumstances a finding of neglect or abuse of a child in a child protective proceeding may also warrant a finding of derivative neglect or abuse involving a sibling or a half-sibling of a target child. (Matter of Marino S., 100 NY2d 361, 373 [2003]; see also Matter of Alijah C, 1 NY3d 375, 378 [2004].)
It is, therefore, well settled law that whereas here, the behavior of a parent or person legally responsible demonstrates such a fundamental flaw in her/his understanding of their parental duties and responsibilities such that any other child in their care would be at risk of harm, a finding of derivative abuse is appropriate to protect the nontarget child. (Matter of Dutchess County Dept. of Social Servs., 191 AD2d 694 [1993]; see also Matter of Amber C., 38 AD3d 538 [2d Dept 2007], and Matter of Brian I., 51 AD3d 792 [2d Dept 2008].) Thus, in this case, *850 respondents’ intentional and direct actions in causing Hailey’s injuries and resulting death, as well as their callousness in failing to obtain immediate medical attention for her, leaves no doubt of the extent to which their understanding of their parental duties is utterly flawed and deficient so as to render their surviving child at great risk of harm if placed in their care. Hence, this court concludes that a finding of derivative abuse against each respondent as to their surviving child, Yamillette, is fully supported by the Family Court Act and existing case law.
Social Services Law — Severe Abuse/Derivative Severe Abuse Findings
Having determined that findings of abuse as to the deceased child, Hailey, and derivative abuse findings as to their surviving child, Yamillette, as to each respondent under article 10 of the Family Court Act are warranted in this case, the court next addresses the question of whether findings of severe abuse and derivative severe abuse under Social Services Law § 384-b also lie as to one or both respondents herein.
The Family Court Act statute explicitly permits the court to enter a finding of severe abuse, as defined in Social Services Law, based on clear and convincing evidence, which shall be admissible in a proceeding to terminate parental rights. (See Family Ct Act § 1051 [e]; Social Services Law § 384-b [8] [a], [b].) By incorporating the Social Services Law into the Family Court Act, the Legislature has made clear its intent to create a child protective system where the adjudication of a deceased child as abused or severely abused is a critical factor in the termination of parental rights proceeding as to a surviving child. (Matter Alijah C., 1 NY3d 375, 378 [2004].) This statutory child protective framework demonstrates a legislative intent to bring deceased children within the scope of the Family Court Act to protect the health and safety of children whose siblings have died at the hands of a parent or caretaker. (Id.)
 Social Services Law § 384-b (8) (a) (i) states in relevant part that a child is “severely abused” by his or her parent if the child is found to be an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing depraved indifference to human life, which results in the serious physical injury to the child as defined in subdivision (10) of section 10.00 of the Penal Law. Here, RM’s intentional act of failing to obtain needed medical care for her 19-month- *851 old daughter, knowing that her paramour had shaken and thrown the child into a playpen, demonstrates recklessness and depravity toward her child’s life. On the basis of these facts, coupled with RM’s felony conviction of manslaughter in the second degree conclusively establishing her culpability in the child’s death, this court concludes that a finding of severe abuse pursuant to Social Services Law § 384-b (8) (a) (i) against RM as to her deceased child by clear and convincing evidence, is warranted. Further, for these reasons as well as based upon the prior finding of neglect entered against RM in New York County Family Court regarding a nonsubject child in this case, this court also concludes that a finding of derivative severe abuse as to her surviving child pursuant to Social Services Law § 384-b (8) (a) (iii) by clear and convincing evidence, also lies.
PLR/RF argues that no authority exists to permit this court to enter a finding of severe abuse against him pursuant to Social Services Law § 384-b (8) (a) (i) because he is not the parent of the abused child. Implicitly, he relies on the argument that he is not the parent of the abused child to support the position that a finding of derivative severe abuse cannot be entered against him pursuant to Social Services Law § 384-b (8) (a) (i) as to the surviving child, Yamillette, who is his biological child.
It is noteworthy that “parent” is not specifically defined in Social Services Law § 384-b with the exception to the reference in the statute that parent includes “an incarcerated parent.” (§ 384-b [2] [b]; Matter of Meredith DD., 13 Misc 3d 894, 897 [2006].) Additionally, in relation to the provisions of Social Services Law pertaining to severe or repeated abuse, the term “parent” or “parents” refers to those whose consent to an adoption of the child is required pursuant to Domestic Relations Law § 111. (Matter of Meredith DD. at 897; see Social Services Law § 384-b [4] [c].) Further, the existing case law that has addressed whether a finding of severe abuse pursuant to Social Services Law § 384-b (8) lies against a respondent who is not the parent of the abused child has held that severe abuse does not lie because there is no issue raised regarding the termination of parental rights. (Matter of Meredith DD. at 899, citing Matter of K.W. v J.D.M., 8 Misc 3d 1013[A], 2005 NY Slip Op 51090[U] [2005]; see also Matter of William S., 12 Misc 3d 1157 [2006].) As such, based on the plain language of the statute and the existing case law, this court concludes that no finding of severe abuse lies against PLR/RF as to the deceased child because Social Services Law § 384-b (8) (a) (i) defines a severely abused *852 child as one whose “parent’s” reckless or intentional acts results in serious physical injury to the child. Here, respondent is not the “parent” of the abused child.
In contrast, however, Social Services Law § 384-b (8) (a) (iii) (A) explicitly includes in its definition of a severely abused child the parent of a sibling who has been convicted of homicide where the victim was another child for whose care such parent is or has been legally responsible. Specifically, the statute states, in relevant part:
“For the purposes of this section a child is ‘severely abused’ by his or her parent if . . .
“(iii) (A) the parent of such child has been convicted of murder in the first degree as defined in section 125.27, murder in the second degree as defined in section 125.25, manslaughter in the first degree as defined in section 125.20, or manslaughter in the second degree as defined in section 125.15, and the victim of any such crime was another child of the parent or another child for whose care such parent is or has been legally responsible . . . ; or has been convicted of an attempt to commit any of the foregoing crimes, and the victim or intended victim was the child of the parent or another child for whose care such parent is or has been legally responsible” (Social Services Law § 384-b [8] [a] [iii] [A]).
This particular subparagraph of the Social Services Law is but one of several that implements the legislative intent of incorporating the Social Services Law into the Family Court Act to create a child protection framework that: (1) brings deceased children within the scope of the Family Court Act to protect the health and safety of children whose siblings have died at the hands of a parent or caretaker, and (2) renders as a critical factor, the adjudication of a deceased child as abused or severely abused, in a subsequent termination of parental rights proceeding. (Matter of Alijah C., 1 NY3d at 378.) Moreover, as the Court of Appeals concluded in Marino S., this subparagraph “plainly contemplates derivative findings as to a sibling.” (Matter of Marino S., 100 NY2d at 373.)
Therefore, PLR/RF’s reliance on Alijah C. for the proposition that a finding of derivative severe abuse against him is not permitted by Social Services Law § 384-b (8) is misplaced. The plain language of the statute and the Court of Appeals decision in Marino S., which upheld the trial court’s finding of derivative severe abuse against a respondent person legally responsible *853 based upon an abuse finding coupled with a felony sex offense against his children’s sibling, fully supports a finding of derivative severe abuse against PLR/RF in this case.
Here, respondent recklessly caused the death of an innocent and helpless 19-month-old child. After shaking and throwing her into a playpen, he and RM failed to seek immediate medical attention for the child and waited until the next day before taking her to the hospital. Once at the hospital, the child had to undergo emergency surgery to drain the blood from her brain and the fluid from her lungs — only to die three days later. The reprehensible nature of respondent’s actions and his depraved indifference to the life of this now deceased child makes clear to this court that a finding of derivative severe abuse in connection with his biological child, Yamillette, is warranted. Based on this court’s finding of abuse as to Hailey, the deceased child under the Family Court Act, and his criminal felony plea as to her death, this court concludes that a finding of derivative severe abuse against PLR/RF as to Yamillette by clear and convincing evidence is fully supported by the Family Court Act and Social Services Law.
Conclusion
For the reasons set forth above, this court grants petitioner’s motion for summary judgment in part and enters the following orders:
1. It is ordered that pursuant to Family Court Act § 1051 (b), the petition filed in this child protective proceeding is amended to conform to the proof establishing RM’s criminal plea of manslaughter in the second degree and PLR/RF’s criminal plea of manslaughter in the first degree of the subject child Hailey, and, establishing the child’s cause of death as “blunt impact head trauma and shaking with subdural and bilateral retinal hemorrhages, diffuse axonal injury and cerebral edema and the manner of death as homicide.”
2. It is ordered the deceased child, Hailey, is an abused child as defined by Family Court Act § 1012 and a finding of abuse is hereby entered as to each respondent for their reckless and intentional acts that resulted in the child’s death and derivative abuse as to their surviving child, Yamillette, by a preponderance of the evidence pursuant to Family Court Act § 1012 (e) (i); § 1046 (b) (i); and § 1051 (e).
3. It is ordered the deceased child, Hailey, is a severely abused child as defined by Social Services Law § 384-b (8) (a) (i) and a *854 finding of severe abuse is hereby entered against RM as to her deceased child, Hailey, and derivative severe abuse is entered against each respondent as to their surviving child, Yamillette, by clear and convincing evidence pursuant to Social Services Law § 384-b (8) (a) (i), (iii); and (f) (ii).

. Yamillette G. is the surviving half sister of Hailey G., the deceased child.

. Pursuant to Family Court Act § 1051 (b), petitioner also seeks to amend the allegations in this pending proceeding to conform to the proof offered in support of the instant motion based upon the Supreme Court criminal convictions of respondents and the Medical Examiner’s autopsy report of the deceased child.

. The petition included language in bold print that a fact-finding that a child is severely or repeatedly abused as defined by Social Services Law § 384-b, by clear and convincing evidence, could constitute a basis to terminate parental rights in a proceeding pursuant to Social Services Law § 384-b.

. The petition also set forth that a prior finding of neglect had been entered against RM in New York County Family Court regarding another non-subject child in the year 2000 and that RM had a related pending AS docket regarding that other nonsubject child. The surviving child in this case, Yamillette, was remanded at arraignment on August 6, 2007, and placed with her older half sister, the subject child in the prior N and AS dockets.
Additionally, the petition included that a prior abuse finding had been entered on behalf of Hailey, the deceased child in this case, against her biological father in 2006. Hailey was then released to respondent mother by an order of disposition entered in Kings County Family Court, May 29, 2007.

. Initially, petitioner took the position that since respondents were convicted of manslaughter in the first and second degrees respectively, that as a matter of law, both abused and severely abused Hailey, the deceased child, and derivatively abused and severely abused the deceased child’s sibling, Yamillette. In their reply affirmation to PLR/RF’s affirmation in opposition to the motion, petitioner implicitly retreated from their initial stance by focusing instead on the argument that since PLR/RF was the parent of the deceased child’s half-sibling a finding of derivative severe abuse as to his biological child, Yamillette, pursuant to Social Services Law § 384-(b) (8) (a) (iii), is permissible.

. This court also takes judicial notice of the finding of neglect entered against RM under docket No. NN-10345/00 in New York County Family Court.