People v Free (2025 NY Slip Op 51399(U))

[*1]

People v Free

2025 NY Slip Op 51399(U)

Decided on September 4, 2025

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 4, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Timothy Free, Defendant.

Docket No. CR-005462-25NY

Destynee Speaks, The Legal Aid Society
Assistant District Attorney Brooke Siegler, New York County District Attorney's Office

Marva C. Brown, J.

Timothy Free, hereinafter "defendant," is charged with tampering with a witness in the fourth degree (PL § 215.10[a]), a class A misdemeanor. By Notice of Motion to Dismiss, dated July 9, 2025, the defense challenges the validity of the People's Certificate of Compliance (COC) and seeks dismissal pursuant to CPL 30.30. The People oppose by motion filed July 28, 2025, and the defense replied on August 6, 2025. The People filed a sur-reply on August 12, 2025. Upon review of the submissions, the Court file and relevant legal authority, this court finds that the People's COC is INVALID, along with the People's Certificate of Readiness (COR). As more than 90 days are chargeable to the People, the defendant's motion to dismiss is hereby GRANTED.
I. PROCEDURAL HISTORY
This case was filed, and the defendant was arraigned on February 19, 2025. The defendant was released, and the case was adjourned to April 9, 2025, for trial. On April 9, the People were not ready, and the case was adjourned to May 29, 2025, for trial. On May 14, 2025, off calendar, the People served and filed a COC and COR. 
On May 29, 2025, the People stated that they were ready for trial, but the defense was not, and the case was adjourned to June 18, 2025. On June 15, 2025, off-calendar, the defendant's case was reassigned to the instant defense attorney at The Legal Aid Society. At the June 18th court date, the newly assigned defense attorney requested the instant motion schedule, and the case was adjourned to September 4, 2025, for a decision. 
On June 20, 2025, the defense emailed the People a list of discovery items they believed to be missing. On July 2, 2025, the People responded that they would look into the list of missing items, and on July 23, 2025, the People disclosed the I-Card that was created for this case. The People never served and filed a supplemental COC detailing this belated disclosure.

II. THE PARTIES' ARGUMENTS
The defense argues that the People's COC was invalid, because they failed to disclose the following prior to filing their COC: (1) the Interrupted Patrol Log; (2) the Pre-Arraignment Notification Report; (3) the I-Card which led to the defendant's arrest; (4) the ECMS Access [*2]Log; (5) Detective Maguires' DD5 attachments [FN1]
; (6) IAB logs and attachments for Officer Estevez; and (7) IAB log attachments for Officer Recinosvallejos. The defense contends that the I-Card was the only item eventually disclosed. 
The People concede that they failed to serve the I-Card until July 23, 2025, and only after their initial COC filing. The People argue that the I-Card was "omitted in error" and was provided "shortly after counsel brought the oversight to the People's attention" (P.'s Opp. at p. 10). However, with respect to the remaining items, the People argue that the pre-arraignment notification report does not exist, and that the rest of the outstanding items are not automatically discoverable. The People concede that they failed to disclose complete IAB materials for testifying Officers Estevez and Recinosvallejos, but they argue that these items have "no relationship to the instant case" and "no tendency to impeach the credibility" of either officer (P.'s Opp. at p. 19-20). The People classify the I-Card as the only automatically discoverable item not disclosed prior to their initial COC and argue that this item was "only a small part of the voluminous disclosures provided to the defendant" (P.'s Opp. at p. 12). The People argue that "[a]pplying the holistic assessment established by Bay to the instant case, the People's COC should be deemed valid despite the belated disclosure of one item" (id.). The People also argue that the new statutory amendments to New York's discovery law, which went into effect on August 7, 2025, should guide this court's decision in assessing their COC's validity. The People urge that under the new amendments, "speedy trial dismissals are only appropriate only when the Court finds an alleged discovery failure is the result of a prosecutor's overall failure to make diligent discovery efforts" (id. at p. 13). 
In the defense's reply, they argue that the I-Card was not the only item not disclosed and point out that, even if it were, the People never filed a supplemental COC explaining this belated disclosure. The defense argues that the newly enacted amendments to the discovery law are not retroactive and urges this court to analyze the People's diligence under the statute as it existed when the People filed their initial COC May 14, 2025. The defense also argues that the People failed to show that they exercised due diligence even if this court were to apply the new amendments in its analysis. The People filed a sur-reply further arguing the retroactivity of the new amendments. 
III. VALIDITY OF THE PEOPLE'S CERTIFICATE OF COMPLIANCE
A. The New Amendments to Article 245 Are Not Retroactive
Article 245 governs the rules of discovery in criminal cases. Recently, the legislature amended sections of CPL Article 245, and these changes took effect on August 7, 2025 (L 2025, ch 56, pt LL, § 8 ["shall take effect on the ninetieth day after it shall have become a law and shall apply to all criminal actions pending on such date and all actions commenced on or after such date"]). However, the amendments to the statute do not address their retroactivity (i.e. whether the new requirements for a valid COC apply to COCs filed prior to the amendments' enactment). As outlined below, based on existing Court of Appeals precedent, it is this court's conclusion that the newly enacted amendments do not apply to COCs filed prior the date these changes took effect. 
"'It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it'" (People v Pastrana, 41 NY3d 23, 29 [2023], cert denied sub nom. Pastrana v New York, 144 S Ct 1066 [2024], quoting People v Galindo, 38 NY3d 199, 207 [2022]; Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 584 [1998] [same], citing Jacobus v Colgate, 217 NY 235, 240 [1916] ["It takes a clear expression of the legislative purpose to justify a retroactive application"]). The Court of Appeals' disfavor towards retroactive application of statutes or amendments applies to both procedural and nonprocedural statutes (see, e.g., In re Marino S., 100 NY2d 361, 370 [2003] ["Generally, nonprocedural statutes are not to be applied retroactively absent a plainly manifested legislative intent to that effect"] [internal citations omitted]; Simonson v Int'l Bank, 14 NY2d 281, 289 [1964] ["while procedural changes are, in the absence of words of exclusion, deemed applicable to subsequent proceedings in pending actions, it takes a clear expression of the legislative purpose to justify a retrospective application of even a procedural statute so as to affect proceedings previously taken in such actions"] [internal citations and quotations omitted]). The Court of Appeals has also applied this concept specifically to statutory amendments which "will in general have prospective effect only, unless its language indicates that it should receive a contrary interpretation" (Galindo, 38 NY3d at 207, quoting Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150, 154 [1984]).
"'[A] postponement of the effective date of a statute. . . is some evidence that the Legislature never intended it to be retroactive'" (People v Duggins, 192 AD3d 191, 195 [2021], quoting Matter of Mulligan v Murphy, 14 NY2d 223, 226 [1964]; see also Galindo, 38 NY3d at 207 ["'The postponement of the effective date . . . furnishes critical and clear indicia of intent. If the amendment [was] to have retroactive effect, there would have been no need for any postponement'"], quoting People v Utsey, 7 NY3d 398, 403—404 [2006]). Here, the Legislature enacted these amendments in May of 2025, but they set an effective date of August 7, 2025. The postponement of the effective date of these amendments indicates an intention to delay its application, which also weighs against applying them retroactively to COCs already filed. 
The People further argue that the amendments made to Article 245 were "remedial", and as such, they should be applied retroactively (P's Sur-Reply at p. 2). A remedial statute is one which is "designed to correct imperfections in prior law, by generally giving relief to the aggrieved party" (Asman v Ambach, 64 NY2d 989, 991 [1985] [internal quotations omitted]). However, even if these amendments could be classified as such, that does not mean that they should automatically be applied retroactively. While "'remedial' legislation or statutes governing procedural matters should be applied retroactively", "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity" (Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d at 584 [Court of Appeals declined to apply a law retroactively even though the legislative history partly indicated that the new legislation was enacted to "clarify what the law was always meant to say and do"]; see also Pastrana, 41 NY3d at 29-30 [declining to apply newly-enacted Penal Law § 222.05 retroactively, which included provisions intended to remedy past discriminatory practices regarding the policing of marijuana because "[n]othing in the text or legislative history of the [statute] requires or supports the conclusion that the legislature intended for the to apply retroactively to invalidate searches that were conducted before the effective date of the statute"]). As the Court of Appeals has cautioned, "[g]eneral principles may serve as guides in the search for the intention of the Legislature in a particular [*3]case but only where better guides are not available" (Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d at 584 [citations omitted]). "In the end, it is in considerations of good sense and justice that the solution must be found in the specific circumstances of each case" (id.) (internal citations and quotations omitted). Lastly, when applying a statute retroactively would impair on vested rights or due process, such application is inappropriate (see In re Marino S., 100 NY2d at 371 [retroactivity appropriate where the statute was "remedial in nature" and did "not impair vested rights"]; Merz v Seaman, 265 AD2d 385, 389 [2d Dept 1999] [refused to apply a remedial statute retroactively because it "would impair vested rights and violate due process"]). 
This is not the first time courts have had to address how changes to New York's discovery laws affect pending cases. Article 245 first came into effect on January 1, 2020. This new discovery law repealed the prior discovery statute, CPL Article 240, and amended CPL 30.30 to tie the People's discovery obligations to trial readiness. Clearly, Article 245 was "remedial" in nature as it was "designed to correct imperfections in prior law," specifically, to "facilitate expeditious resolution of cases and better enable defense counsel to investigate and prepare for trial" (People v Bay, 41 NY3d 200, 208 [2023], citing Report of the New York State Justice Task Force of its Recommendations Regarding Criminal Discovery Reform at 5 [2014]). As a remedial statute, when it was enacted, one could argue Article 245 should apply to previous statements of readiness and require prosecutors to certify compliance with this new discovery law on pending cases prior to proceeding to trial. However, in People v King, 42 NY3d 424 (2024), the Court of Appeals rejected this very interpretation. In King, the Court of Appeals held that statements of readiness made prior to Article 245's enactment remained valid under the previous existing laws, even though those statements were not accompanied with the prosecutors' attestations that they had served the defense with all required discovery (id. at 426). Further, the Court of Appeals specifically held that courts could not apply Article 245 prospectively to pending cases where the People were already in a trial-ready posture prior to its enactment (id. at 428 ["In other words, the People are not required to fulfill a prerequisite to declaring trial readiness when they have already validly declared ready for trial"]). The court reasoned that doing so would result in a "retroactive application" of the new law absent express language indicating that was the Legislature's intended result (id.).
Here, once again, the laws governing discovery have been altered, and without comment on retroactivity, and a consistent result is warranted. Absent specific language concerning the amendments' retroactivity, courts should not ignore the strong presumption of prospectivity to apply these newly enacted statutes to statements of readiness made prior to their effective date. Here, the Legislature indicated that the new amendments would apply to "pending cases", however, nowhere did the Legislature indicate that the new standard should apply to COCs previously filed that specifically attested adherence to the existing discovery laws at the time they were filed.[FN2]
Further, when the People filed their COC on May 14, 2025, they certified that [*4]they had disclosed and made available all existing known material and information subject to the discovery laws in place at that time. The legislative purpose behind the requirement of a COC filing from the People is that they are attesting to their compliance with Article 245 at the time of filing (see People v Kendzia, 64 NY2d 331, 337 [1985] [statements of readiness should indicate "present readiness"]). It would defy logic for this court to now analyze whether, at that time, the People had met a legal standard that was not yet in effect.
The People's argument that the Legislature's directive that the 35-day window for defendants to challenge a COC begin on the effective date of these amendments "would make little sense unless the Legislature intended courts to apply new statutory standards to COCs filed under the prior law" is misplaced. An equally reasonable interpretation of this directive is that the Legislature was simply giving the defense time to adjust to this significant change, when prior to this new rule, the standard was simply that the defense had to file "as soon as practicable". Allowing more time for parties to adjust to rule changes, especially where a defendant's due process rights are at stake, is reasonable and promotes fairness and justice.
Therefore, under all the circumstances, including the strong presumption that legislation shall be applied prospectively, this court finds that the new amendments are not retroactive and should not apply to COCs filed prior to their effective date.
B. The People Failed to Exercise Due Diligence Prior to Filing their COC
Under former CPL 245.20(1), "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to" the items listed in CPL 245.20[1][a]-[u]. The prosecution must also "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [former CPL 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody, or control" (former CPL 245.20[2]). All items and information related to the prosecution of in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution (id., see also former CPL 245.55[1] [prosecution must "ensure that a flow of information is maintained between the police and other investigative personnel and his or her office"]). 
"Read together, CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC" (Bay, 41 NY3d at 212). Prosecutors cannot validly state "ready for trial" under CPL 30.30 until they have filed a proper COC pursuant to Article 245 (Bay, 41 NY3d at 210, citing CPL 245.50[1]). Although belated disclosures do not automatically invalidate a COC, in such instances, the People bear the burden of establishing that they exercised "due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay, 41 NY3d at 213, citing People v Santos, 68 NY2d 859, 861 [1986]). The Court of Appeals in Bay discussed Article 245 and how courts can evaluate prosecutorial due diligence and reasonableness as it pertains to discovery compliance:
Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of [*5]discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery (id.).
The question as to whether the People made reasonable efforts and exercised due diligence "is a mixed question of fact and law" (id. at 215), "case-specific," and "will turn on the circumstances presented" (id. at 212). If the prosecution fails to demonstrate that they exercised due diligence prior to filing their COC, "the COC should be deemed improper, the readiness statement stricken as illusory, and — so long as the time chargeable to the People exceeds the applicable CPL 30.30 period — the case dismissed" (Bay, 41 NY3d at 213). "[A] defendant need not demonstrate prejudice to obtain speedy trial dismissal based on failure to timely comply with discovery obligations"[FN3]
(id., citing People v Hamilton, 46 NY2d 932, 933-34 [1979] and CPL 30.30[1]).

1. The People Evinced a Lack of Due Diligence by Failing to Comply with Mandated Disclosure Timelines.
As a threshold issue, here, the People made seemingly no efforts to comply with the required statutory timeframes outlined in Article 245, which apply both before and after the new amendments. These timeframes require the People to perform their initial discovery obligations on a case where the defendant is released within thirty-five calendar days after the defendant's arraignment on a misdemeanor complaint.[FN4]
Here, in arguing that they acted diligently, the People focus a large part of their opposition outlining the steps taken to prosecute this case. The majority of the steps outlined in the Peoples' papers related to either: (1) their efforts to obtain a signed supporting deposition and superseding information from the complainant; or (2) their attempts to obtain an unsealing order from the court to obtain an order of protection from a sealed case in order to prove criminal contempt. The People do not explain why these efforts resulted in their failure to disclose discoverable materials. As obtaining a supporting deposition is a requirement in the vast majority of cases in order for the People to declare ready, and nothing in Article 245 dictates that a supporting deposition is required prior to disclosing discovery, this does not amount to the People demonstrating due diligence.
The People provided very little information about the steps they took to provide the actual discovery created for this case as mandated by Article 245. The first time the People indicate that they provided any information to the defense was on April 25, 2025, 65 days after arraignment, when they emailed the complainant's signed supporting deposition to the defense. However, the People do not indicate that they served any discovery along with this document, [*6]even though it appears from their papers that they were in actual possession of automatically discoverable material soon after the defendant's arraignment. Further, while the People reference emails sent to their office's Litigation Support Unit ("LSU") to obtain outstanding discovery, the only correspondences referenced in the papers begin on April 29, 2025, which was already 69 days from the defendant's arraignment. Here, the first time the People indicate that they provided any discovery to the defendant was on May 14, 2025, 84 days from the defendant's arraignment and only one week from the expiration of the speedy trial period for this case. From the Peoples' papers, it appears that they possessed a large portion of this discovery prior to May 14, 2025, yet waited to disclose the items until the speedy trial period had nearly elapsed. For example, the People reference watching body-worn camera the day after the defendant's arraignment to examine the videos for additional discovery. However, they fail to articulate any time periods prior to their May 14th COC filing where they disclosed discovery in their actual possession to the defense. The People also provide no explanation as to why they did not or could not comply with the timeframes outlined in Article 245. These facts alone suggest a lack of due diligence and good faith to provide discovery (see People v Stamm, 85 Misc 3d 136[A] [App Term, 2d Dept 9th and 10th Jud Dist 2025] [noting the People's failure to abide by the 35-day rule in attempting to disclose impeachment material and holding "[w]hile there was no impeachment material to turn over, that fact is inconsequential since, in the first instance, the People needed to show due diligence and good faith to submit a proper COC"]). 
2. The People Evinced a Lack of Due Diligence by Failing to Disclose the I-Card For this Case.
The People concede that they accidentally failed to disclose the I-Card created for this case, which led to the defendant's arrest and the instant charges. The People were aware that an I-Card was created for this case, as their actions led to the I-Card's creation. Months before the defendant's arraignment on this case, on November 25, 2024, the People obtained video surveillance from outside of the complainant's home. This video captured the defendant approaching the complainant allegedly in violation of an order of protection in place at that time. After viewing this video, the People conferred with Detective Maguire, who then generated a probable cause I-Card for the defendant. This I-Card then led to the defendant's apprehension and arrest months later on February 19, 2025. 
The fact that the I-Card was not disclosed would have been apparent to a prosecutor exercising due diligence in providing discovery to the defense. Further, as the People concede, the I-Card is not substantively duplicative of other evidence, nor is this an insignificant piece of discovery (P.'s Opp. at p. 16). When an I-Card leads to an arrest, the defense cannot adequately prepare for a suppression hearing without this critical piece of information. And, here, while this omission was eventually remedied, it took over a month for the People to disclose the I-Card once they were alerted to their mistake by the defense. In failing to exercise due diligence and adhere to statutory timeframes outlined in Article 245, the People put themselves in a position where they were vulnerable to challenges for inadvertent non-disclosures, such as this one. Lastly, the People never served a supplemental COC, as required by Article 245 (both before and after the statutes' recent reforms) (see CPL 245.50[1-a] ["Any supplemental certificate of compliance shall detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance"]). This is also further evidence of the People's lack of due diligence in performing their disclosure [*7]obligations. 
3. The People Failed to Disclose Adequate IAB Materials for Testifying Officers
Contrary to the Peoples' claims, the I-Card was not the only automatically discoverable item they failed to disclose prior to filing their initial COC. In their opposition, the People concede that they did not disclose all IAB logs and attachments for their testifying police witnesses, including underlying materials for substantiated and unsubstantiated complaints for both officers. The People argue that they were not required to disclose these materials because they are not automatically discoverable. The People claim that these materials have "no tendency to impeach the credibility of a testifying witness" and that none of this material "has any relationship to the instant case or the officer's truthfulness at trial" (P.'s Opp. at p. 19-20). At no point did the People file a protective order to seek the court's permission to redact or withhold this information. 
This court has previously held that IAB log attachments for substantiated and unsubstantiated claims of misconduct are automatically discoverable impeachment material for testifying witnesses, regardless of whether the People feel they are related to the subject matter of the instant case (see, e.g., People v Aron, 85 Misc 3d 1231[A] [Crim Ct, NY County 2025] [People's COC was invalid for their failure to exercise due diligence and make reasonable inquiries with respect to officers' disciplinary records]). This conclusion is based on the plain language of CPL 245(1)(k)[FN5]
along with binding and persuasive appellate precedent on this issue (see CPL 245.20[1][k] [the People must disclose impeachment material for testifying witnesses "irrespective of whether the prosecutor credits the information"]; People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022] [Appellate Term invalidated COC where the People failed to turn over underlying impeachment materials without addressing whether said records related to the subject matter], citing Matter of Jayson C., 200 AD3d 447 [1st Dept 2021] [court held that a defendant in a criminal proceeding would be entitled to access to the underlying impeachment records without analyzing whether the records related to the subject matter of the instant case]; People v Coley, 2025 NY Slip Op 01945 [2d Dept 2025] [the People's automatic discovery obligation under CPL 245.20(1)(k)(iv) is not subject to "an additional layer of analysis" of whether the material is "related to the subject matter of the case"]; People v Luna, 83 Misc 3d 62 [App Term, 2nd Dept, 9th and 10th JD 2024] [conviction reversed, COC deemed invalid, and case dismissed where the People failed to disclose underlying IAB records for an officer involved in the case]). To the extent that the People disagree, they are free to file a protective order to seek the court's permission to limit such disclosures. 
This court feels compelled to point out that the new amendments to Article 245 did not alter the language of this CPL section concerning impeachment material for testifying witnesses. In their sur-reply arguing retroactivity of the new amendments, the People cite to a speech made by New York Assemblywoman Latrice M. Walker, where she urged others to vote to pass the new proposed amendments. As the People quoted, Ms. Walker stated, "I want to emphasize that [*8]these amendments have not changed the basic premise of discovery reform."[FN6]
However, immediately thereafter, Ms. Walker elaborated on this comment and specifically addressed the importance of automatically disclosing police disciplinary records in criminal cases. As stated by Ms. Walker:
"We have not changed the importance of turning over disciplinary records of police officers. When we repealed Civil Rights Law 50-a, we acknowledged that police officers should be treated like everyday witnesses. Evidence about credibility rises to that constitutional level. These discovery laws acknowledge that the defense cannot effectively test an officer's credibility or assertions unless they have access to detailed disciplinary or misconduct records. The misconduct does not have to arise from the instant criminal case. While prosecutors are granted more leeway to redact materials, they must still state the reasons for doing so. These amendments today still require that prosecutors turn over the core discovery requirements without redactions. We are not allowing prosecutors to go back to being the gatekeepers of evidence. They cannot determine what is relevant or what may be significant. Prosecutors look at evidence with only one eye. They look for evidence that will lead to a conviction. Evidence that may be helpful to a defense may be deemed by them to be insignificant. Thus, while one of the many due diligence factors includes the courts' ability to determine what is significant, prosecutors may not and should not make that determination" (id. at 5:57-7:18). 
As Ms. Walker's speech makes clear, the new amendments in no way allow the prosecutor to determine what is relevant or may be significant when it comes to disciplinary records, nor are prosecutors now considered the gatekeepers of this evidence. Therefore, even if the new amendments did apply to this court's analysis, absent a protective order, the People would have been required to automatically disclose these IAB logs and attachments. 

Here, the People failed to articulate any efforts made to share the contents of the IAB attachments for the substantiated and unsubstantiated complaints of their testifying officers prior to filing their COC. Further, these materials remain outstanding, despite the fact that they appear to be in the People's actual possession. It is unclear when the People analyzed the IAB attachments to determine that they were not useful for impeachment. While they describe the contents of these materials in detail, they do not indicate when they reviewed these materials to determine whether they felt they should be disclosed. From their papers, it appears that they simply disclosed the IAB logs without attachments 84 days from the defendant's arraignment, and when challenged, they explained the content of these materials and why they deemed them to be insignificant. Regardless, they should have sought a protective order if they planned to withhold any of this information, and their failure to do so constitutes a lack of due diligence. In doing so, the People stepped into the role of gatekeeper of the evidence and unilaterally determined what was significant — the very situation that Article 245 sought to prevent, and the spirit of which the recent amendments maintain. Further, all of this was done without court permission, despite the fact that Article 245 allows the People to seek a protective order where they feel information about their own testifying witnesses is not discoverable. As such, the [*9]Peoples' actions with respect to the IAB logs and attachments do not constitute due diligence, either before or after the new amendments' effective date.
In conclusion, the People have failed to meet their burden to establish that they acted with due diligence and made reasonable inquiries and efforts to obtain and share all discovery required under Article 245. As such, the People's COC, dated May 14, 2025, is INVALID.

IV. SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, the prosecution must be ready within 90 days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). Absent a valid COC, the People cannot be deemed ready for trial (CPL 245.50[3]).
This case was filed, and the defendant was arraigned on February 19, 2025. The defendant was released, and the case was adjourned to April 9, 2025, for trial. This time is chargeable because the People did not file a COC or COR during this time period. (49 days charged)
On April 9, the People were not ready, and the case was adjourned to May 29, 2025, for trial. On May 14, 2025, off calendar, the People served and filed a COC and COR. However, as stated above, the People's COC was invalid and ineffective in stopping the speedy trial clock. As such, this entire adjournment is chargeable to the People. (50 days charged; 99 days total)
As more than 90 days of chargeable days have accrued for this case, defense counsel's motion to dismiss is GRANTED. The defendants' remaining arguments are rendered moot. This constitutes the Decision and Order of this Court.
Dated: September 4, 2025
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1:The People indicate that Detective Maguire's only DD5 attachment is the I-Card that led to the defendant's arrest. 

Footnote 2:For example, when sentencing law PL 70.15 was amended in 2019, the Legislature included retroactive language: "The amendatory provisions of this subdivision are ameliorative and shall apply to all persons who are sentenced before, on or after the effective date of this subdivision, for a crime committed before, on or after the effective date of this subdivision" (PL 70.15[1-a][b]). Here, the Legislature could have included similar retroactive language concerning COCs filed prior to the new amendments, but they specifically did not.

Footnote 3:Even the newly enacted amendments do not require prejudice for a court to deem a COC invalid, it is merely a factor to consider when analyzing the validity of a COC.

Footnote 4:When the discoverable materials, including video footage from body-worn cameras, surveillance cameras, or dashboard cameras, are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution, the time period in this paragraph may be stayed by up to an additional thirty calendar days" without permission from the court (CPL 245.50[1][a]).

Footnote 5:The new amendments did not alter the language of this CPL section concerning impeachment material of testifying witnesses. 

Footnote 6:https://nyassembly.gov/mem/?ad=055&sh=video&video=26178#videos at 5:38.